722 So.2d 944 (1998)
SALICK HEALTH CARE,INC., Petitioner,
v.
Jerome J. SPUNBERG, M.D., and Bruce W. Phillips, M.D., and Columbia/JFK MEDICAL CENTER, INC., a Florida corporation, and The University Of Miami, a Florida corporation, Respondents.
No. 98-1658.
District Court of Appeal of Florida, Fourth District.
December 30, 1998.
Lorie M. Gleim, Holly R. Skolnick, and Mark F. Bideau of Greenberg, Traurig, Hoffman, *945 Lipoff, Rosen & Quentel, P.A., West Palm Beach, for petitioner.
Matthew S. Nelles and Peter M. Feaman of Buckingham, Doolittle & Burroughs, LLP, Boca Raton, for respondent Columbia/JFK Medical Center, Inc.
James W. Beasley, Jr. and Robert J. Hauser of Beasley, Leacock & Hauser, P.A., West Palm Beach, for respondents Jerome J. Spunberg, M.D. and Bruce W. Phillips, M.D.
PER CURIAM.
Salick Health Care, Inc., a nonparty to the proceedings below, petitions this court for a writ of certiorari quashing the lower court's order compelling it to produce documents it claims are proprietary and confidential trade secret information. Because we find that the trial court failed to first determine whether the documents sought constitute trade secrets, we grant the petition and remand for an in camera hearing and inspection.
The facts of the underlying litigation can be briefly summarized. Doctors Jerome J. Spunberg and Bruce W. Phillips brought an action against Columbia/JFK Medical Center, Inc. ("JFK" or "hospital") and the University of Miami arising from a dispute relating to their medical staff privileges at JFK. The doctors had been providing radiation oncology services at the hospital pursuant to their contract with Petitioner Salick Health Care, Inc. (Salick). Salick had an exclusive provider agreement with the hospital. The doctors' contracts with Salick expired in 1992, but Salick's exclusive provider agreement with the hospital did not expire until 1997, leaving the doctors' status unclear during the final five year period. Upon expiration of the contract with Salick, the hospital voted not to continue with Salick but, rather, to enter into a contract with a new exclusive provider, the University of Miami. Its decision was based upon information that Salick was planning to build its own cancer treatment center that would be in competition with the hospital. The doctors sued the hospital and the University of Miami, claiming breach of contract and tortious interference and seeking an injunction precluding JFK from terminating their privileges without a peer review hearing.
As part of its discovery in the underlying case, JFK issued and served a subpoena duces tecum on Salick seeking documents relating to the construction or proposed construction of radiation oncology centers in South Florida and market analyses prepared for the petitioner concerning the market needs for radiation oncology centers in a five county area. Specifically, JFK's subpoena duces tecum for these materials requested:
5. Any documents whatsoever in your possession concerning the construction or proposed construction of any radiation oncology centers, whether free-standing, or not, in Palm Beach, Martin, St. Lucie, Broward or Okeechobee Counties, including any documents memorializing the terms of such center, such as its size, location, staffing requirements, etc.
6. Any and all market analyses performed by you or on your behalf concerning the market needs for any radiation oncology center in Palm Beach, Martin, St. Lucie, Broward or Okeechobee Counties.
Salick filed written objections to the materials requested, asserting that some of the documents contained highly confidential and proprietary information. At the hearing on the objections, Salick explained that the hospital was its competitor and that the information concerning future plans for expansion constituted trade secrets. The hospital disagreed and further responded that the information was relevant to the issue of the doctors' claim that they were being deprived of their opportunity to practice in their specialties. The trial court sustained the objections in part, finding that the five county area was too broad and restricting discovery to documents relating to plans to build centers in Palm Beach or Martin Counties or Port St. Lucie, and only for those centers that have been made known to the public through public documents such as building permits. The court further ordered Salick to produce marketing analyses for centers that meet that definition. The court found that none of the information, including the internal documents containing marketing analyses, would be trade secrets if they related to centers whose plans have already been made public. With *946 respect to Request # 5 and 6#, the court ordered, in pertinent part, as follows:
2. Salick's objections to documents request # 5 is overruled in part. Salick shall produce to Defendants all such documents requested, but only for Palm Beach and Martin Counties and Port St. Lucie. Additionally, Salick is required to produce only those documents concerning the construction or proposed construction of any radiation oncology center to the extent that those centers have been made known to the public by the existence of public documents such as building permits, licenses, etc.
3. Salick's objections to document request # 6 is overruled in part. Salick shall produce all market analyses performed in connection with the construction or proposed construction of all radiation oncology centers disclosed in connection with request #5.
Subsequently, Salick claimed it obtained new evidence, which confirmed its earlier suspicion that JFK was seeking the documents for improper business purposes as it competitor. Salick moved for a rehearing or clarification based on this newly discovered evidence, which included a letter from JFK informing Salick of JFK's intent to open an oncology center in Boca Raton and proposing either a joint venture with Salick or a buyout of Salick's interest in the market. The motion for rehearing was denied.
Salick contends that the trial court did not afford it full procedural safeguards and consideration of the trade secret privilege it asserted. While acknowledging that the court carefully crafted its ruling in an attempt to require Salick to only produce documents already in the public domain, Salick argues that the order rendered nonetheless requires production of documents containing trade secret information which have not been made public. Hence, the court erred by dispensing with a hearing and failing to make specific findings of fact concerning its trade secret objections.
Certiorari review is available for an order that denies protection from disclosure of information that is alleged to be privileged. See Uniroyal Goodrich Tire Co. v. Eddings, 673 So.2d 131, 132 (Fla. 4th DCA 1996). Trade secrets are privileged under section 90.506, Florida Statutes (1995):
A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require. The privilege may be claimed by the person or the person's agent or employee.
In Uniroyal, this court adopted the test set forth in Rare Coin-it, Inc. v. I.J.E., Inc., 625 So.2d 1277, 1278-1279 (Fla. 3d DCA 1993):
When trade secret privilege is asserted as the basis for resisting production, the trial court must determine whether the requested production constitutes a trade secret; if so, the court must require the party seeking production to show reasonable necessity for the requested materials.... If production is then ordered, the court must set forth its findings.
This determination will usually require that the trial court conduct an in camera hearing and inspection of the materials in question to determine whether they contain trade secrets. Uniroyal, 673 So.2d 131. In this case, the court determined, without an in camera inspection, that the materials it was ordering disclosed did not constitute trade secrets. Thus, it did not go any further with the "reasonable necessity"analysis.
Respondents contend that the order does not require disclosure of trade secrets because it requires the petitioner to produce only those documents that "relate to" matters that are already part of the public record, such as permits. However, petitioner points out that if it was the trial court's intention to limit production to documents that are already part of the public record, the written order does not include that limitation, since it requires production of documents relating to proposed expansion sites that are known to the public, not just documents that are themselves available to the public. Further, *947 the order expressly requires Salick to produce all market analyses performed for the centers for which public records exist. Salick complains that the subject market analyses contain highly confidential and proprietary information, including the formulas, variable, market assessments and profit projections it made when deciding whether to build an oncology center in a particular location. According to Salick, the disclosure of its marketing research to a competitor, such as JFK, would be "suicide." Such information, it maintains, is not commonly available to the public and should be analyzed in camera prior to being released.
Because we find that the trial court departed from the essential requirements of law, as set forth in Uniroyal, we grant the petition for writ of certiorari and remand to the trial court to conduct an in camera hearing and inspection of the materials sought under Request # 5 and # 6 of the subpoena to determine whether they constitute trade secrets, and, if so, to require respondents to show reasonable necessity for their disclosure.
Certiorari Granted.
POLEN, SHAHOOD and TAYLOR, JJ., concur.