761 So.2d 1206 (2000)
AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC., Petitioner,
v.
Jessica CRUZ, Respondent.
No. 4D00-1279.
District Court of Appeal of Florida, Fourth District.
June 28, 2000.
*1207 Paul E. Heimberg of Heimberg & Lumer, Miami, for petitioner.
Joanne Garone, Pembroke Pines, for respondent.
PER CURIAM.
American Express Travel Related Services, Inc. (hereinafter "American Express" and "Petitioner") seeks a writ of certiorari quashing the order of the trial court relating to the discovery requests of Jessica Cruz (hereinafter "Cruz" and "Respondent") made pursuant to her counterclaims. We grant the petition and quash the order of the trial court.
American Express seeks to recover $97,496.32 in unpaid account charges from Cruz, a former cardholder and employee. Cruz counterclaimed for damages alleging American Express issued a supplemental credit card to a third party on her account and breached the terms of her agreement with Petitioner by authorizing the third party's charges after she had closed her account in July 1996.
As part of the factual basis for her counterclaim, Cruz alleges that after she closed her account, the supplemental cardholder, an employee of American Express, effectuated credit authorizations with the assistance of two other employees at American Express. Cruz sought to have American Express produce its Internal Credit Authorizations *1208 Manual (hereinafter "Manual"), the personnel files for herself and the individuals alleged to be involved in the unauthorized charges, and a report pertaining to the company's investigation of these employees for similar misconduct.
At the hearing on the motion to compel production, American Express objected to the production of these items and claimed the Manual was a protected "trade secret" under section 688.002(4), Florida Statutes. It also claimed the personnel files and investigative report were confidential and privileged commercial records. It asked the court to conduct an in camera inspection of the Manual to determine whether it constituted a trade secret and whether the necessity for its production outweighed the interest in maintaining its confidentiality. The trial court judge declined to read the Manual because he had "no time to do it" and suggested American Express could utilize a confidentiality agreement to protect its interest. American Express also asked the court to conduct an in camera inspection of the personnel files and investigative report, and, assuming the court determined these items were discoverable by Cruz, allow it to seek appellate review of its decision before it released these items to Cruz.
The trial court indicated it would release the files and report to Respondent in the event it determined they were not privileged. Accordingly, the trial court ordered American Express to (i) produce its files and investigative materials related to the conduct of these individuals for an in camera inspection by the court, and (ii) produce its Manual for the Respondent.
American Express sought to stay the trial court's order granting the discovery and sought a writ of certiorari compelling the trial court to conduct an in camera inspection of the Manual and to allow it to pursue its appellate remedy prior to releasing the personnel files and investigative report to Cruz in the event the trial court determines these items are discoverable by her. We granted the stay pending our review of this petition.
The standard for granting a writ of certiorari for a non-final order is: (1) the order to be reviewed must constitute a departure from the essential requirements of law; (2) the order must cause material injury through subsequent proceedings; and (3) the injury must be irreparable, i.e., one for which there will be no adequate remedy after final judgment. See Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987); Bared & Co., Inc. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996)(en banc).
A "trade secret" is defined in section 688.002(4), Florida Statutes, as:
information, including a formula, pattern, compilation, program, device, method, technique or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Section 90.506, Florida Statutes provides:
A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require.
(Emphasis added.)
When trade secret privilege is asserted as the basis for resisting production, the trial court must determine whether the requested production constitutes a trade secret; if so, the court must require the party seeking production to show reasonable necessity for the requested materials. *1209 The burden is on the party resisting discovery to show "good cause" for protecting or limiting discovery by demonstrating that the information sought is a trade secret or confidential business information and that disclosure may be harmful. See Kaiser Aluminum & Chem. Corp. v. Phosphate Eng'g & Constr. Co., 153 F.R.D. 686 (M.D.Fla.1994). If production is then ordered, the court must set forth its findings. See Rare Coin-it, Inc. v. I.J.E., Inc., 625 So.2d 1277, 1278-1279 (Fla. 3d DCA 1993).
This determination will usually require that the trial court conduct an in camera inspection of the materials in question to determine whether they contain trade secrets. See Salick Health Care, Inc. v. Spunberg, 722 So.2d 944 (Fla. 4th DCA 1998)(finding trial court departed from the essential requirements of law when it compelled production of documents alleged to be proprietary and confidential trade secret information without first conducting an in camera hearing and inspection and failing to make specific findings of fact concerning the trade secret objections); Uniroyal Goodrich Tire Co. v. Eddings, 673 So.2d 131, 132 (Fla. 4th DCA 1996)(granting petition for certiorari, quashing the trial court's order compelling production and remanding to trial court with instructions to conduct an in camera inspection of the manual in question or alternatively an evidentiary hearing to determine whether the manual is a trade secret); Austin v. Barnett Bank of South Florida, N.A., 472 So.2d 830, 830 (Fla. 4th DCA 1985)("Where a claim of privilege is asserted, the trial court should hold an in camera inspection to review the discovery requested and determine whether assertion of the privilege is valid.").
In Beck v. Dumas, 709 So.2d 601 (Fla. 4th DCA 1998), we addressed whether certiorari review should lie when a lower court, upon a motion to compel production, compelled production of a source code, design documentation and other technical information alleged to be computer trade secrets, without first conducting an in camera inspection or evidentiary hearing. We wrote:
The question before us is whether the court departed from the essential requirements of law by ordering [Petitioner] to disclose its trade secret without first conducting either an in camera inspection or an evidentiary hearing. We think so, given the sophisticated and highly technical nature of the requested materials.
The broad judicial discretion which the trial court enjoys in ruling on discovery matters of this type cannot properly be exercised in a vacuum or on a mere whim. The court needs sufficient insight into the relevant factors which must be weighed before deciding the competing interests of the respective parties. Conceivably, on a matter with which the court is familiar and which is not the subject of a genuine factual dispute, argument of counsel might well suffice. But here the matters were of a highly technical nature, and the court candidly acknowledged its lack of familiarity with the requested materials. Under the circumstances, and given the inherent nature of advocacy, the court needed more than the argument of [Respondent's]' counsel that he "needed" the materials upon which to base its decision to override [Petitioner's] statutory privilege against disclosure.
Id. at 603.
The trial court's endorsement of Petitioner's use of a confidential agreement is not sufficient to override Petitioner's concern. Nor would a protective order be sufficient. See Rare Coin-it, 625 So.2d at 1278 ("Production of the source code, without a showing and finding of reasonable necessity, would cause Rare irreparable harm. This is true even when the trial court orders production subject to a protective order.").
We also agree that the trial court should not provide Respondent with the personnel files and investigative report if it determines they are subject to disclosure without first allowing Petitioner an opportunity *1210 to seek meaningful appellate review. Petitioner will not be able to seek review of the trial court's determination as an appealable non-final order under rule 9.130. Thus, certiorari review will be its vehicle to redress error. See Martin-Johnson v. Savage, 509 So.2d 1097, 1099 (Fla.1987) ("A non-final order for which no appeal is provided by Rule 9.130 is reviewable by petition for certiorari. ..."). We think that fairness requires that Petitioner be allowed an opportunity for certiorari review to establish (i) a departure from the essential requirements of law and (ii) that release of this discovery will cause irreparable injury that cannot be remedied on appeal.
Accordingly, we grant the petition for writ of certiorari and direct the trial court to conduct an in camera inspection of the Manual and to make findings of fact in order to determine: (1) whether the Manual constitutes a "trade secret"; and if so (2) whether the necessity for the production of the Manual outweighs the interest in maintaining its confidentiality. We further direct the trial court to allow Petitioner meaningful appellate review before releasing the personnel files and investigative report to Respondent in the event it determines these items are discoverable by Respondent.
FARMER, STEVENSON and HAZOURI, JJ., concur.