811 So.2d 852 (2002)
Francois GUERRIER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-617.
District Court of Appeal of Florida, Fifth District.
March 28, 2002.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Francois Guerrier appeals the judgment and sentence imposed after the jury found him guilty of one count of aggravated stalking. He argues that the trial court erred in allowing his treating psychiatrist and the psychiatrist's nurse to testify, over objection, that he had threatened to kill his stalking victim. We affirm.

Factual Background
The relationship between Defendant and the victim, Tana Cantave, began as a romantic one in New York in 1999. After Defendant and Tana began living together in Florida, the couple's relationship eroded *853 rather quickly and Tana obtained an injunction against domestic violence to prevent Defendant from having further contact with her. Defendant persisted in phoning and writing to Tana in contravention of the injunction.
Ultimately, Tana moved to another city, apparently hoping to get away from Defendant. He found her, however, and continued to contact her. Even after Defendant was arrested and jailed, Defendant continued writing Tana. In addition to Tana's answering machine tapes of Defendant's messages to her, forty plus letters were admitted into evidence.
The letters are rambling and nauseatingly repetitive on the topics of Defendant's love for Tana and his religious beliefs, but do not contain any outright threats of violence against Tana. Defendant did threaten Tana's new boyfriend[1] and, in one letter, asked Tana to imagine how devastated she would be if someone asked her to prove to him that she loved him by giving her daughter a poison and killing her, as that is what "Jehovah has done to save His creation." Several letters allude to Defendant committing suicide and state that Tana will be responsible. A number of the more recent letters contain lyrics to songs Defendant wrote about Tana. We will spare the reader the substance of these romantic serenades.
The Defendant was arrested and charged with aggravated stalking. While Defendant was incarcerated, he obtained counseling with a jail psychiatrist, Dr. Donny Baskaran. Over Defendant's objection on the grounds of hearsay and privileged communication, Dr. Baskaran was allowed to testify during Defendant's trial that in the course of his treatment, Defendant made statements threatening to kill Tana and himself. Dr. Baskaran determined that Defendant had the ability to carry out his threat and accordingly had his nurse, who also witnessed the statements, telephone Tana and warn her. The nurse, Judy Penney, testified to having made the warning phone call. Likewise, Tana testified, over objections based on hearsay and privilege, that the nurse had phoned and warned her that Defendant had threatened to kill her.
The issue we must resolve, which appears to be one of first impression, is whether the testimony of Dr. Baskaran and his nurse regarding the threats was admissible during Defendant's trial pursuant to section 456.059, Florida Statutes (2001), which establishes an exception to the psychotherapist-patient privilege. We will limit our decision to resolution of this narrow issue. The broader issue of whether, once notification is made to the victim and law enforcement, section 456.059 allows disclosure for other purposes is not before us and is an issue we do not decide.
Defendant urges that we very narrowly limit application of the exception established in section 456.059 to the report by the psychiatrist to the victim and law enforcement. In contrast, the State exhorts us to broadly interpret the exception to allow the testimony of the psychiatrist, nurse, and the victim at the trial of the patient who has committed a crime against the victim. In order to resolve the issue before us, we will discuss privileges under Florida law and the standard by which we should interpret them. Following that discussion, we will analyze the particular provisions of sections 90.503 and 456.059 wherein we find the psychotherapist-patient *854 privilege and the dangerous patient exception.

Privileges Under Florida Law
The only privileges recognized under Florida law are those established by The Florida Evidence Code, any other statute, the federal or Florida constitutions, and the Florida Supreme Court pursuant to its rule making authority. See § 90.501, Fla. Stat. (2001); State v. Castellano, 460 So.2d 480 (Fla. 2d DCA 1984); Marshall v. Anderson, 459 So.2d 384 (Fla. 3d DCA 1984). Thus, with the exception of rules adopted by the Florida Supreme Court, "privileges in Florida are no longer creatures of judicial decision." Castellano, 460 So.2d at 481 (citation omitted).
"Evidentiary privileges are generally looked on with disfavor, and privileges ... which were unknown at common law, are particularly disfavored, and strictly construed to limit their application." National Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 331 (Fla. 3d DCA 1999), approved, 765 So.2d 36 (Fla.2000).[2] The common law did not recognize a physician-patient privilege and, therefore, communications between physician and patient were not protected from disclosure.[3]See Coralluzzo v. Fass, 450 So.2d 858 (Fla.1984); Attorney ad Litem for D.K. v. Parents of D.K., 780 So.2d 301 (Fla. 4th DCA 2001); Fidelity & Cas. Co. of New York v. Lopez, 375 So.2d 59 (Fla. 4th DCA 1979); see also Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911 (Fla.1938) (holding that the common-law rule that communications between physician and patient are not privileged is the law in Florida).
The reason for the common law's reluctance to embrace testimonial privileges is rooted in the general precept that privileged communications are an exception to the rule that all relevant evidence is admissible. This was explained by the Court in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996):
The common-law principles underlying the recognition of testimonial privileges can be stated simply. "`For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'" Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a "`public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'"
518 U.S. at 9, 116 S.Ct. 1923 (citations omitted) (footnote omitted). Even though privileges are no longer established by the courts, the reason for the common law rule of disclosure is no less significant when the Legislature considers adoption of a privilege.
*855 Specifically, the common law did not recognize a psychotherapist-patient privilege. Therefore, when the Legislature enacted section 90.503, Florida Statutes, it created a privilege where none had existed at common law. Subsequently, the Legislature enacted section 456.059, Florida Statutes, which creates the dangerous patient exception. Thus we are not constrained by the rule of strict statutory construction in interpreting the exception under section 456.059, as we would be in interpreting the privilege created by section 90.503.
Having established that we should give a liberal interpretation to the dangerous patient exception, we next analyze the provisions of the privilege and this particular exception.

The Psychotherapist-Patient Privilege And The Dangerous Patient Exception
The fact that the common law did not recognize a physician-patient privilege can best be explained by reference to the generally accepted notion, evidently premised on the natural inclination toward self preservation, that potential disclosure of a patient's confidences to the physician in court proceedings would not be a deterrent to submission by the patient of information necessary to obtain proper medical treatment for their physical ailments. Thus there was no reason to depart from the accepted common law principle that generally favored access to relevant testimony to ascertain the truth in judicial proceedings. However, in enacting section 90.503, the Legislature recognized the need for testimonial privilege "to encourage patients to seek treatment for mental and emotional conditions." Attorney ad Litem, 780 So.2d at 306.
It is obvious, however, that the Legislature did not envision the psychotherapist-patient privilege as absolute or immutable given the exceptions provided in sections 90.503 and 456.059. When the Legislature enacted section 456.059, it provided for an exception to the privilege when a patient makes a threat to physically harm an identified person and the treating psychiatrist makes a clinical judgment that the patient has the capability to commit that act and will likely do so in the near future. In that situation, the psychiatrist "may disclose patient communications to the extent necessary to warn any potential victim or to communicate the threat to a law enforcement agency." § 456.059(3), Fla. Stat. (2001). The statute does not, however, specifically provide that the psychiatrist may testify regarding the threat at any subsequent trial wherein the patient is prosecuted for crimes committed against the victim.
In deciding whether the dangerous patient exception extends to allowing the psychiatrist to testify regarding the threat in criminal proceedings against the patient, the focal point of our inquiry is determining the Legislature's intent in enacting this particular exception. See Deason v. Florida Dep't of Corrections, 705 So.2d 1374 (Fla.1998).
The obvious intent behind section 456.059 is to provide protection to the victim of the threat. The goal of victim protection is accomplished by the psychiatrist's disclosure of the threat to the victim and/or a law enforcement agency. Disclosure to the victim gives the victim warning of the threat and the opportunity to take measures for self protection. Victim protection may also require disclosure to law enforcement so that the law enforcement agency may assist in protecting the victim from the threat. We find that the goal of victim protection extends to eliciting from the psychiatrist relevant evidence (the threat) that will facilitate the prosecution of a crime committed against the victim by *856 the dangerous patient. Thus when the Legislature enacted section 456.059, the Legislature intended to allow admission of the psychiatrist's testimony in a subsequent prosecution of the dangerous patient for offenses committed against the victim.
By enacting section 456.059, the Legislature expressed its conclusion that the need for full disclosure by the patient to the psychiatrist is outweighed by the need to protect the victim from harm by a dangerous patient. The Legislature thus has returned to the common law preference for disclosure of relevant testimony to the extent necessary to fully protect the victim, which includes allowing the psychiatrist to testify in trial proceedings wherein the patient is prosecuted for the commission of a crime against the victim. Therefore, we conclude that application of the narrow interpretation advanced by Defendant would thwart the intent of the Legislature in enacting section 456.059. It would render an absurd result if this court were to hold that the psychiatrist, who reports pursuant to the statute, is prevented from testifying in the trial of the patient who is alleged to have committed a crime against the victim in accordance with the threat previously made. This we must not do. See Florida Dep't of Bus. & Prof'l Regulation, Div. of Pari Mutuel Wagering v. Investment Corp. of Palm Beach, 747 So.2d 374 (Fla.1999).
The dangerous patient exception limits the disclosure that may be made in the trial proceedings. Section 456.059(3) specifically provides that patient communications may be disclosed "to the extent necessary" to warn the victim or to notify law enforcement. Accordingly, only statements made by the dangerous patient that are necessary to warn the victim and communicate the threat to law enforcement may be disclosed. Other communications that fall within the privilege created by section 90.503 remain protected and may not be disclosed under section 456.059.

Conclusion
To summarize, the psychotherapist-patient privilege exists as a matter of public policy to promote the benefits of full and frank disclosure of information between the psychotherapist and patient. These benefits are deemed by the Legislature to outweigh the cost of relevant probative evidence lost in the privilege. The balance shifts, however, when a patient communicates a threat that the treating psychiatrist perceives as likely to occur. Because such communications do not create a net benefit to the public that warrants application of the privilege, the rationale that underpins the privilege vanishes or, at least, significantly diminishes in force. Thus, to the extent of the parameters of the dangerous patient exception, we have traveled full circle to the common law rationale that favors access to relevant and probative evidence. This, in turn, favors application of the dangerous patient exception to allow the psychiatrist's testimony in court proceedings when the victim of the threat has become the victim of a crime.
AFFIRMED.
THOMPSON, C.J., and PALMER, J., concur.
NOTES
[1] He left a note on her door stating, "I hate a liar. Hope you understand what this mean now `war.' Tell your little friend to get the hell out of dodge before you be responsible for him. Big bull dogs. [undecipherable]. Call me at xxx-xxxx at 8 p.m. or 9 p.m. if you like to talk this over before it's too late."
[2] This rule is in accord with the general rule of statutory construction which provides that "a statute in derogation of the common law must be strictly construed." Ady v. American Honda Fin. Corp., 675 So.2d 577, 581 (Fla. 1996) (citation omitted). Moreover, "a court will presume that such a statute was not intended to alter the common law other than by what was clearly and plainly specified in the statute." Id. (citation omitted); see also Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977) ("Statutes in derogation of the common law ... will not be interpreted to displace the common law further than is clearly necessary.").
[3] In 1988, the Legislature amended section 455.241(2) to create a physician-patient privilege. See Acosta v. Richter, 671 So.2d 149 (Fla.1996).