846 So.2d 1208 (2003)
Dennis and Mary HILL, et al., Petitioners,
v.
STATE of Florida, Respondent.
No. 5D02-3222.
District Court of Appeal of Florida, Fifth District.
June 6, 2003.
*1209 Steven G. Mason of Steven G. Mason, P.A., Donald R. Henderson and Jennifer E. Fulks of Matteer & Harbert, P.A., Timothy A. Berry, Orlando, and Edward Culhan, Winter Park, for Petitioners.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, DaytonaBeach, for Respondent.
SHARP, W., J.
The petitioners, Mary Hill (a defendant in a criminal case being prosecuted below), Dennis Hill (Mary Hill's husband), and Dr. Gfeller (Mary Hill's psychotherapist) seek certiorari review of pre-trial discovery orders compelling Dennis Hill and Dr. Gfeller to answer questions propounded by the state. The petitioners rely on the marital privilege, section 90.504, and the psychotherapist privilege, section 90.503. The state relies on section 39.204, which it claims completely abrogates the Evidence Code privileges for marital and psychotherapist communications. We grant the writ, in part, modify the order of the trial court, and remand for further proceedings.
The events giving rise to this proceeding are tragic. On August 7, 2000, Dennis Hill drove Mary Hill, to an appointment with her psychiatrist, Dr. Gfeller in the early afternoon. Dennis was driving Mary's car, a 1996 BMW, because his car was being repaired. After the appointment, with Dennis still driving, they picked up their daughter at her middle school, in Seminole *1210 County. They also picked up two neighborhood children who needed a ride home, on an informal, not pre-arranged, basis. The three children sat in the back seat, wearing seatbelts. Dennis drove to an Exxon station where he had left his car.
Because Dennis intended to drive his own car home, Mary moved to the driver's seat, in her car, and headed for their home. She drove West on Lake Mary Boulevard and then South on Markham Woods Road. There was evidence Mary drove her car at a high rate of speed on Lake Mary Boulevard and accelerated after an intersection onto Markham Woods. She lost control of the car on a curve. The car skidded off the road and struck a tree. The crash resulted in the deaths of their daughter and one of the neighborhood children, and severe injuries to the other child.
In April of 2001, Mary was charged with two counts of vehicular homicide.[1] During its investigation, the state agreed the marital privilege barred access to Mary's confidential communications with her husband. However, after approximately 21 months, the state amended the charges to add a felony count of child neglect, pursuant to section 827.03(3)(b) for the injured child, and two additional counts of manslaughter pursuant to section 782.07. Thereafter the state sought to elicit the testimony of Dennis and Dr. Gfeller, as to matters possibly covered by the marital and psychotherapist privileges.
Dennis was summoned for a formal deposition, with notice to defense counsel. The state began asking questions which could have invaded the marital privilege as well as the attorney client privilege. One of the defenses being considered by Mary's defense team was that her vehicle had a cruise control malfunction at the time of the accident. The state asked Dennis, "When was the first time you heard any discussions about cruise control malfunctions?" His attorney objected and instructed Dennis that if he acquired that information from his wife in terms of a private "communication," or from his attorney, he should not answer the question. Dennis said, "Then I can't answer it." He later said he had not discussed the cruise control issue with anyone other than his wife.
Dennis was also asked other questions which he refused to answer, based on the marital privilege. Dennis indicated his sole source for the information being asked were the private communications with his wife. The following questions were certified to the circuit court, in addition to the one about the cruise control issue:
1. Do you know whether or not your wife has been seeing any kind of psychiatrist or psychologist?
2. Was there a reason why she did not go to Dr. Gfeller's by herself? [Or, why was he driving rather than his wife?]
3. What was the purpose of the visit?
4. Do you know who her psychotherapist or psychiatrist is?
5. Do you know whether or not your wife had received electroshock therapy?
6. As to August 7, 2000, did your wife receive electroshock therapy on that particular date?
However, Dennis did say later in the deposition, that he did not know whether his wife was going to receive any specific kind of treatment from Dr. Gfeller on the day of the accident, and she did not tell him anything about the kind of treatment she had received. He also later said he did not know whether Dr. Gfeller was his *1211 wife's psychotherapist. Thus, questions 3, 4 and 6 were essentially answered.
With regard to Dr. Gfeller, the state sought to interview him by serving him with an investigative subpoena, without notice to defense counsel or Mary. When Dr. Gfeller's attorney realized the circumstances, he made a blanket objection to Dr. Gfeller answering any questions regarding Mary, or revealing anything about her records or treatment, by invoking the psychotherapist privilege. It is not clear from the record, what specific questions the state wanted to ask Dr. Gfeller. But in general, Dr. Gfeller's attorney instructed him not to answer any questions about the treatment he had provided to Mary Hill that day.
In its motion to compel testimony from both Dr. Gfeller and Dennis Hill, the state asserted the psychotherapist privilege and the marital communications privilege are waived by section 39.204 which provides,
The privileged quality of communication between husband and wife and between any professional person and his or her patient or client, and any other privileged communication ... shall not apply to any communication involving the perpetrator or alleged perpetrator in any situation involving known or suspected child abuse, abandonment, or neglect...
It claimed that Dr. Gfeller's treatment, observations and communications with Mary a few hours before the fatal crash were relevant to the state's prosecution of the child neglect charge. It also claimed that the certified questions posed to Dennis were relevant to the state's prosecution of Mary for the child neglect charge.
The trial court noted that the child neglect charge was "tenuous" at best since it was based on Mary Hill's driving at an excessive speed with a child in the car. However, the court concluded that because of the broad definition of "neglect" in section 827.03, section 39.204 abrogated both the psychotherapist and marital communications privileges.
The trial court ordered Dennis Hill to answer the certified question posed to him in his deposition and it ordered Dr. Gfeller to answer the questions posed to him in his deposition, although as noted above, there were no specific questions in this record.
Initially the state argues that this is an improper case for review by way of a petition for writ of certiorari, because if error occurred below, it can be remedied on appeal. However, if error occurred below, waiting until the appeal process to address it, does not cure an erroneous disclosure of information which should have remained confidential. The real injury in such cases is the disclosure of communications or records which may embarrass or destroy an important relationship the state has chosen to protect. Once the "cat is out of the bag," as some courts have said, it cannot be stuffed back in.[2] For example, a party may successfully assert on appeal, the breach of a privileged communication by a trial court's ruling and yet lose the case because the appellate court concludes the error was not prejudicial or fundamental. See Donaldson v. State, 369 So.2d 691 (Fla. 1st DCA 1979). Or even if the party is successful on appeal, the real *1212 harm doneimproper disclosurecannot be excised.
Because of the nature of discovery orders recognizing or not recognizing the existence of a privilege, appellate courts frequently choose to review trial court's non-final orders compelling or refusing to compel discovery by accepting petitions for certiorari.[3] In addition, in this case, Dennis Hill and Dr. Gfeller have also asserted their respective privileges for marital communications and the psychotherapist-patient communications. Because they are not parties to the underlying criminal action, certiorari is the only practical way they can defend their privilege short of risking a contempt citation. See Briggs v. Salcines, 392 So.2d 263 (Fla. 2d DCA 1980). We agree with the second district that the latter is "too great a price" to require them to pay for the assertion of their privileges. Briggs, at 265.
In Florida, the marital communication privilege, although originally created by the common law,[4] is a creature of statute.[5] It is presently included as part of the Evidence Code. The Florida State courts accept the statute, as modified from time to time, as the sole source of the privilege.[6] It provides in relevant part:
Sec 90.504 Husbandwife privilege
(1) A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications which were intended to be made in confidence between the spouses while they were husband and wife.

* * *
(3) There is no privilege under this section;

* * *
(b) In a criminal proceeding in which one spouse is charged with a crime committed at any time against the person or property of the other spouse, or the person or property of a child of either. (emphasis added)
Because in this case, the wife, Mary Hill, had been charged with two criminal counts for the death of the parties' daughter, it is clear that the marital communication privilege did not exist for communications relating to the homicide counts. The trial judge primarily relied on section 39.204 as having abrogated the marital communication privilege. It probably *1213 also destroyed the privilege for marital communications concerning the child neglect charge, as discussed below. But it is not necessary to reach for an abrogating statute, when the privilege itself does not encompass marital communications regarding the fatal accident which caused both the death of the daughter and injury to the neighbor child.
The psychotherapist-patient privilege did not exist at common law,[7] and is a relatively recent privilege created and defined solely by statute.[8] It is also part of the Evidence Code and provides in relevant part:
Section 90.503 Psychotherapist-patient privilege.
(1) For purposes of this section:
(a) A "psychotherapist" is:
1. A person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, who is engaged in the diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addition;
2. A person licensed or certified as a psychologist under the laws of any state or nation, who is engaged primarily in the diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug additions;

* * *
(b) A "patient" is a person who consults, or is interviewed by, a psychotherapist for purposes of diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addition.
(c) A communication between psychotherapist and patient is "confidential" if it is not intended to be disclosed to third persons ...

* * *
(2) A patient has a privilege to refuse to disclose and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcoholism and other drug addiction, between the patient and the psychotherapist... this privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.
(3) The privilege may be claimed by:
(a) The patient ...

* * *
(d) The psychotherapist, but only on behalf of the patient. The authority of a psychotherapist to claim the privilege is presumed in the absence of evidence to the contrary.
This privilege is "abrogated" by section 39.204 in cases involving child abuse, abandonment, or neglect. That statute provides:
The privilege quality of communications between husband and wife and between any professional person and his or her patient or client and any other privileged communication except that between attorney and client or the privilege provided in s. 90.505 ... shall not apply to any communication involving the perpetrator or alleged perpetrator in any situation involving known or suspected child abuse, abandonment, or neglect... and shall not constitute grounds for ... failure to give evidence *1214 in any judicial proceeding relating to child abuse, abandonment, or neglect. (emphasis added)
In this case, the State has charged Mary Hill with felony child neglect pursuant to section 827.03(b)(3), which constitutes a judicial proceeding. The statute defines the crime of neglect of a child as follows:
A person who willfully or by culpable negligence neglects a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child ...
Proof of this crime requires the state to establish a high degree of culpability on the part of the defendant, equivalent to the kind of wanton and reckless behavior necessary to prove manslaughter or punitive damages. See, State v. Wynne, 794 So.2d 642 (Fla. 2d DCA 2001); Arnold v. State, 755 So.2d 796 (Fla. 2d DCA 2000). Although we have found no case in which a defendant has been convicted of this crime because of his or her reckless driving of a vehicle which resulted in the injury of a child, if the defendant's reckless driving is shown to be sufficiently gross, there is no reason the charge could not be proven. Because of the clear statutory language in both section 39.204, and section 827.03(b)(3), we agree with the trial court that the psychotherapist-patient privilege does not exist in this case as to any communications relevant to the child neglect felony count. See State v. Jett, 626 So.2d 691 (Fla.1993). Cf., E.H. v. Dep't of Health and Rehabilitative Services, 443 So.2d 1083 (Fla. 3d DCA 1984).
However, our conclusion in this case does not entitle the State to embark upon questions or an investigation of communications or records which are not related or relevant to the criminal charges in this case. As to all other marital or psychotherapist-patient communications, the privileges continue in effect.[9] The strong public policy undergirding both of these privileges[10] requires no less.
With regard to the questions the trial court has required Dennis to answer, as noted above, he has answered three out of the six questions posed. No additional answers should be required to those questions. As for the remaining questions, to the extent Dennis obtained knowledge from confidential communications with his wife, and not other sources, the State must make a preliminary showing that the information sought is relevant to the homicide or the child neglect charges. Cf., State v. Rivers, 787 So.2d 952(Fla. 2d DCA 2001); Hunter v. State, 639 So.2d 72 (Fla. 5th DCA 1994). If relevancy is challenged by Dennis or Mary, the trial court shall make the determination as to relevancy. It may employ an in camera procedure. We thus modify the trial court's order to the extent stated above.
The trial court's order compelling Dr. Gfeller to answer "the questions" posed to him by the State should be similarly modified. Only questions seeking confidential psychotherapistpatient communications, records, treatment and diagnosis which are relevant to the child neglect charge should be permitted. Prior to posing any questions or seeking medical records, the State must make a preliminary showing why the information sought is relevant to the child neglect charge. Challenges to relevancy by Dr. Gfeller or Mary shall be determined *1215 by the trial circuit, and again if necessary, the court may employ an in camera technique.
Petition for Writ of Certiorari GRANTED; Modify Orders Compelling Answers.
SAWAYA and ORFINGER, JJ., concur.
NOTES
[1] § 782.071, Florida Statutes (2000).
[2] See Alterra Healthcare Corp. v. Estate of Francis Shelley, 827 So.2d 936 (Fla.2002); Wooten, Honeywell & Kest P.A. v. Posner, 556 So.2d 1245 (Fla. 5th DCA 1990); Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). Courts recognize that there is no adequate remedy on appeal; Gracey v. Eaker, 837 So.2d 348 (Fla.2002); Cedars Healthcare Group, Ltd. v. Freeman, 829 So.2d 390 (Fla. 3d DCA 2002 ); Palm Beach County School Board v. Morrison, 621 So.2d 464 (Fla. 4th DCA 1993).
[3] See e.g. Alterra Healthcare Corp. v. Estate of Francis Shelley, 827 So.2d 936 (Fla.2002); O'Neill v. O'Neill, 823 So.2d 837 (Fla. 5th DCA 2002)(psycho-therapist privilege); State v. Famiglietti, 817 So.2d 901 (Fla. 3d DCA 2002)(psycho-therapist privilege); Nationwide Mutual Fire Ins.Co. v. Hess, 814 So.2d 1240 (Fla. 5th DCA 2002)(attorney-client privilege); State v. Rivers, 787 So.2d 952 (Fla. 2d DCA 2001) (medical records); Horning-Keating v. State, 777 So.2d 438 (Fla. 5th DCA 2001)(attorney work product privilege); American Express Travel Related Services v. Cruz, 761 So.2d 1206, 1207 (Fla. 4th DCA 2000)(attorney client privilege); State v. Patterson, 694 So.2d 55 (Fla. 5th DCA 1997); State v. Pinder, 678 So.2d 410 (Fla. 4th DCA 1996)(sexual assault counselor-victim privilege); Palm Beach County School Board v. Morrison, 621 So.2d 464 (Fla. 4th DCA 1993)(psychotherapist privilege); Cantor v. Toyota Motor Sales USA, Inc., 546 So.2d 766 (Fla. 5th DCA 1989); Seminole County v. Wood, 512 So.2d 1000 (Fla. 5th DCA 1987); Carson v. Jackson, 466 So.2d 1188 (Fla. 4th DCA 1985)(psychotherapist privilege).
[4] See Henderson v. Chaires, 25 Fla. 26, 6 So. 164 (1889).
[5] See Kerlin v. State, 352 So.2d 45 (Fla.1977).
[6] Dobbert v. Strickland, 532 F.Supp. 545 (M.D.Fla.1982), affirmed, 718 F.2d 1518 (11th Cir.1983); Kerlin v. State, 352 So.2d 45 (Fla. 1977). See also State v. Castellano, 460 So.2d 480 (Fla. 2d DCA 1984).
[7] Guerrier v. State, 811 So.2d 852 (Fla. 5th DCA 2002).
[8] O'Neill v. O'Neill, 823 So.2d 837 (Fla. 5th DCA 2002); State v. Famiglietti, 817 So.2d 901 (Fla. 3d DCA 2002).
[9] Carson v. Jackson, 466 So.2d 1188 (Fla. 4th DCA 1985).
[10] Gracey v. Eaker, 837 So.2d 348 (Fla.2002); Mercer v. State, 40 Fla. 216, 24 So. 154 (1898); Cedars Healthcare Group, Ltd. v. Freeman, 829 So.2d 390 (Fla. 3d DCA 2002); Cantor v. Toyota Motor Sales USA, Inc., 546 So.2d 766 (Fla. 5th DCA 1989); Kerlin v. State, 352 So.2d 45 (Fla.1977);