MONACO, J.
In this tragic case, Mary L. Hill appeals the judgment and sentence adjudicating her guilty of vehicular homicide,[1] manslaughter,[2] and actual infliction of personal injury by culpable negligence,[3] and the order denying her motion for new trial. She first argues that the trial court erred in overruling her objection to the comments of the prosecutor during closing argument. We discern no error in this regard. She next argues that the trial court erred in denying her motion for new trial based on newly discovered evidence. Although we affirm on this basis as well, the argument merits discussion.
*1118 This court summarized the background facts of this case in Hill v. State, 846 So.2d 1208 (Fla. 5th DCA 2003):
The events giving rise to this proceeding are tragic. On August 7, 2000, Dennis Hill drove Mary Hill, to an appointment with her psychiatrist, Dr. Gfeller in the early afternoon. Dennis was driving Mary’s car, a 1996 BMW, because his car was being repaired. After the appointment, with Dennis still driving, they picked up their daughter at her middle school, in Seminole County. They also picked up two neighborhood children who needed a ride home, on an informal, not pre-arranged, basis. The three children sat in the back seat, wearing seatbelts. Dennis drove to an Exxon station where he had left his car.
Because Dennis intended to drive his own car home, Mary moved to the driver’s seat, in her car, and headed for their home. She drove West on Lake Mary Boulevard and then South on Markham Woods Road. There was evidence Mary drove her car at a high rate of speed on Lake Mary Boulevard and accelerated after an intersection onto Markham Woods. She lost control of the car on a curve. The car skidded off the road and struck a tree. The crash resulted in the deaths of their daughter and one of the neighborhood children, and severe injuries to the other child.
Id at 1209-10.[4]
One of the key witnesses at the trial was James Arthur. Mr. Arthur was in a van immediately behind Mrs. Hill at the time of the incident. He testified that she was driving in a dangerous fashion before she came to a stop light at the corner of Lake Mary Boulevard and Markham Woods Road. He said that Mrs. Hill almost sideswiped him, and that she slid into the intersection past the stop bar, and then had to put her car in reverse. When she did so, according to Mr. Arthur, he feared that she would hit his van. When the light changed, Mr. Arthur testified that Mrs. Hill screeched her tires as she accelerated, and that within two blocks she lost control of the car and crashed into the tree. Mrs. Hill’s defense, on the other hand, was that she had been driving safely, but that a malfunction in the cruise control system caused her car to accelerate suddenly and unexpectedly, causing the accident. Indeed, a fair amount of the trial was consumed with opposing experts testifying concerning the cruise control system in Mrs. Hill’s vehicle. In any event, while there were a number of witnesses who contradicted some parts of Mr. Arthur’s testimony, the jury agreed with the prosecution’s version of the facts, and convicted Mrs. Hill, as indicated.
Subsequent to the trial, and four years after the accident, two persons, Mr. and Mrs. Chatman, contacted defense counsel and advised him that they were in a vehicle directly behind the van driven by Mr. Arthur. The Chatmans were in the area of the accident because they had picked up their two sons from high school, and after going over some paperwork with one son’s teacher, they proceeded to Lake Mary Boulevard. At a hearing on the defense motion for new trial the Chatmans and one of their sons testified, essentially, that while they could not see what happened after the light changed (the Arthur van having blocked their view), they saw the Hill car and it was being operated in a normal fashion. They said that they saw Mrs. Hill’s car change lanes, but they did *1119 not observe any near sideswiping of the van.
There were a number of problems with the proposed testimony of Mr. and Mrs. Chatman, however. In addition to some internal inconsistencies between the testimony of Mr. and Mrs. Chatman, there was a timing issue that was puzzling. Although the accident happened at 4:15 p.m., the Chatmans’ sons were let out of school at 2:20 p.m., about 90 minutes before Mrs. Hill picked up the children who rode in her car from the adjacent middle school. The Chatmans’ son testified that he waited for 15 to 20 minutes for his parents to arrive at his school, and the teacher conference took 10 to 20 minutes. This still left a time discrepancy of about 50 minutes that was never fully explained.
At the conclusion of the testimony the well-experienced and eminently qualified trial judge first considered the test to be applied in determining whether a new trial of a criminal case should be granted because of newly discovered evidence. Florida Rule of Criminal Procedure 3.600(a)(3) provides that a court shall grant a new trial if the defendant brings forth “[n]ew and material evidence, which, if introduced at the trial would probably have changed the verdict or finding of the court, and which the defendant could not with reasonable diligence have discovered and produced at the trial, has been discovered.” The Florida Supreme Court has explained that this rule can be reduced to two components:
In order to provide relief on the ground of newly discovered evidence, the asserted facts must have been: (1) unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known them by the use of diligence; and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial.
Rogers v. State, 783 So.2d 980, 1003 (Fla.2001) (citing Melendez v. State, 718 So.2d 746, 747 (Fla.1998); Blanco v. State, 702 So.2d 1250, 1251 (Fla.1997); Jones v. State, 591 So.2d 911, 915 (Fla.1991)).
The State does not contest the issue of whether the new evidence was unknown by the court, party or counsel at the time of trial, and the trial court found that the evidence brought forward by Mrs. Hill clearly met this part of the standard. Accordingly, as the trial court did, we will concentrate on the second part of the test — whether the newly discovered evidence would probably produce a different result had it been introduced at trial.
In Jones v. State, 709 So.2d 512, 521 (Fla.), cert. denied, 523 U.S. 1040, 118 S.Ct. 1350, 140 L.Ed.2d 499 (1998), the Supreme Court of Florida explained that to make this determination, the trial court must consider the evidence that would be admissible at trial, and evaluate the weight of that evidence vis-a-vis the evidence that was, in fact, introduced at trial. See also Sims v. State, 754 So.2d 657 (Fla.), cert. denied, 528 U.S. 1183, 120 S.Ct. 1233, 145 L.Ed.2d 1122 (2000). The court further instructed:
In considering the second prong, the trial court should initially consider whether the evidence would have been admissible at trial or whether there would have been any evidentiary bars to its admissibility. Once this is determined, an evaluation of the weight to be accorded the evidence includes whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether the evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evi *1120 dence and any inconsistencies in the newly discovered evidence. Where, as in this case, some of the newly discovered evidence includes the testimony of individuals who claim to be witnesses to events that occurred at the time of the crime, the trial court may consider both the length of the delay and the reason the witness failed to come forward sooner.
Jones at 521-22 [citations omitted]; see also Rutherford v. State, 926 So.2d 1100 (Fla.), cert. denied, — U.S. -, 126 S.Ct. 1191, 163 L.Ed.2d 1145 (2006); Robinson v. State, 770 So.2d 1167 (Fla.2000).
In the present case the trial judge found that the evidence, although cumulative, would have been admissible. He considered the materiality and relevance of the evidence, and noted cogently, that the testimony would not be reflective of what happened after Mrs. Hill left the traffic light. The Chatmans could not see what happened because they were behind Mr. Arthur’s van. He noted the inconsistencies and timing issues inherent in the testimony, and then applied the test articulated in rule 3.600(a)(3). Because the trial judge applied the correct law, we conclude that we should review this case using an abuse of discretion standard. See Newkirk v. State, 791 So.2d 1206 (Fla. 5th DCA 2001); Gordon v. State, 744 So.2d 1112 (Fla. 5th DCA 1999), approved, 780 So.2d 17 (Fla.2001). In this connection the Florida Supreme Court has noted that if a trial court’s order is supported by competent, substantial evidence, then a reviewing court should not substitute its judgment for that of the trial court on either questions of fact, the credibility of the witnesses, or the weight to be accorded to the evidence by the trial court. Blanco, 702 So.2d at 1252 (citing Demps v. State, 462 So.2d 1074, 1075 (Fla.1984)); see also Goldfarb v. Robertson, 82 So.2d 504, 506 (Fla.1955).
The troubling question facing the trial court was whether the testimony of the Chatmans would probably have produced an acquittal on retrial. The trial judge in considering this issue said the following:
Now, I’ve taken the time to explain my feelings about it because I know that this ruling is going to be reviewed and my colleagues over in Daytona certainly know how to tell me if I’m wrong. And it is a close case. I’ll be the first to say it. And if I had the feeling that truly what I have heard would probably change the verdict in this case, I would grant a new trial without a hesitation, but I just don’t feel that way.
I’ve considered it all, and I’m far more familiar with the record than you think, and I just don’t believe that this is the case and this is the time for this motion. So I’m going to deny it and I’m going to enter my own order and we’re in recess.
The trial court did not abuse its discretion. Accordingly, we affirm.
AFFIRMED.
PLEUS, C.J. and LAWSON, J„ concur.

. § 782.071, Fla. Stat (2001).

. § 782.07, Fla. Stat. (2001).

.§ 784.05(2), Fla. Stat. (2001).

. We also had before us the facts of this case in a family law context in Brown v. Brown, 873 So.2d 601 (Fla. 5th DCA 2004).