IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

SCOTT MCDERMOTT,

        Appellant,

 v.

Case No.  5D22-0113
LT Case No. 2019-102088-CFDL

STATE OF FLORIDA,

        Appellee.

_____/

Opinion filed May 12, 2023

Appeal from the Circuit Court
for Volusia County,
Dawn D. Nichols, Judge.

Jonathan E. Mills, Orlando,
for Appellant.

Ashley Moody, Attorney General,
Tallahassee, and Kristen L.
Davenport, Assistant Attorney
General, Daytona Beach, for
Appellee.


SOUD, J.

Appellant Scott McDermott was charged with first-degree sexual battery of his step-daughter when she was older than twelve but less than eighteen years old, while he was in a position of familial or custodial authority.[1] A jury of Appellant's peers found him guilty of this charge but found the State did not prove sexual penetration. Thereafter, Appellant was designated a sexual predator and sentenced to twenty years in prison, to be followed by ten years of sex offender probation. Appellant appeals his judgment and sentence. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm.

I.

Appellant married the victim's mother when the victim was just two years old. He lived with the victim, the victim's mother, and two additional children shared in common by Appellant and the victim's mother. Appellant abused the victim until she moved out of the residence—the day after she turned eighteen years old. The victim moved into her biological father's house.

A few weeks later, and while the victim and her biological father were on a trip, the victim told her father of the years of abuse by Appellant. The

---

[1] The victim suffered the charged abuse from the time she was sixteen until she turned eighteen years old. At time of trial, she was twenty-one years old.

victim's father immediately returned home and met with the victim and her mother. At that meeting, the victim told her mother about the abuse.

Later that same evening, the victim's mother—Appellant's wife—confronted Appellant, who admitted his guilt. Appellant first admitted to his wife that he had engaged in oral sex with the victim. However, in the days after this initial confession, he additionally admitted to inserting the tip of his penis into the vagina of the victim.

After Appellant confessed to the victim's mother, the two met with Ryan and Ashley Worden, their friends who volunteered in lay leadership at their local church.[2] At this meeting, Appellant, while sitting on the couch of the Wordens' house, again admitted his guilt.[3] The victim's mother also told the Wordens all the allegations were true and that Appellant had sexually abused the victim. Importantly, at the time of this meeting in the Worden residence, while Mr. Worden was a layman who served in the church, he was not a

---

[2] Appellant and the victim's mother (Appellant's wife) previously had been to the Wordens' house for Bible studies. The victim's mother and Mrs. Worden were also friends outside the church.

[3] At trial, Appellant claimed he did not actually acknowledge that the victim's allegations were true, but rather only that it was true that she had made the allegations. Mr. Worden, however, disputed this and testified Appellant admitted his guilt.

pastor or an ordained minister.[4] Mr. Worden received his license as a minister a month or two after this meeting.

Mr. Worden met with Appellant several more times after this initial meeting and prayed with him "as a friend." Mr. Worden reminded Appellant that he (Mr. Worden) was not a pastor and told Appellant he needed to meet with the pastor of their church because he needed "real help." Mr. Worden testified he was meeting with Appellant to make sure he was "doing the right things" and taking the steps needed to ensure other children were not harmed.

## II.

Prior to trial, Appellant filed two separate motions seeking to exclude evidence. First, he filed his "Motion to Suppress & in Limine" seeking to exclude any evidence of the statements he made to Mr. Worden (with Mrs. Worden and the victim's mother present), claiming such were protected by the clergy privilege. Appellant believed Mr. Worden had completed his training to be a pastor, and he sought spiritual counseling from Mr. Worden, instead of the pastor of the church, because he was closer in age to Mr.

---

[4] Mr. Worden was taking, or had just completed, two years of online seminary courses.

Worden. He believed that any communications he made at the Wordens' home would be confidential.

Appellant also filed "Defendant's Second Motion to Suppress & in Limine" seeking to exclude admissions made to his wife, the victim's mother. He argued that any statements made to his wife concerning the victim's allegations were protected by the husband-wife privilege.

The trial court denied both motions. Appellant argues the trial court erred in its rulings on the motions and by allowing his statements into evidence.[5] Appellant's arguments are without merit.

While Appellant styled both of his motions as motions "to Suppress & in Limine," we must look "to the substance of the motion[s] in determining how to review [them]." *United States v. Mays*, 424 Fed. App'x 830, 833 (11th Cir. 2011) (citing *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003)). As both motions address the admission of testimony Appellant claims is protected by privilege, we review the trial court's decisions for abuse of discretion. *See Cuevas v. State*, 310 So. 3d 60, 65 (Fla. 4th DCA 2021) (citing *Fernandez v. State*, 730 So. 2d 277, 282 (Fla. 1999) ("[W]e find no abuse of discretion in the trial court's ruling against any claim to clergy

---

[5] Appellant raises additional issues on appeal. We affirm on all such matters without further discussion.

5

communications privilege . . . .")); *see also Kaczmar v. State*, 104 So. 3d 990, 999 (Fla. 2012) (noting that a claim of husband-wife privilege is reviewed for an abuse of discretion).

In Florida,

> [t]he only privileges recognized under Florida law are those established by The Florida Evidence Code, any other statute, the federal or Florida constitutions, and the Florida Supreme Court pursuant to its rule making authority. Thus, with the exception of rules adopted by the Florida Supreme Court, "privileges in Florida are no longer creatures of judicial decision."

*Guerrier v. State*, 811 So. 2d 852, 854 (Fla. 5th DCA 2002) (citations omitted); *see also* § 90.501, Fla. Stat. (2020).[6] In this case, even if a privilege existed in the common law, the Florida evidence code is the sole source of both the clergy communications and husband-wife privileges, and the text of

---

[6] Section 90.501, Florida Statutes (2020), provides:

> **Privileges recognized only as provided.**—Except as otherwise provided by this chapter, any other statute, or the Constitution of the United States or of the State of Florida, no person in a legal proceeding has a privilege to:
> (1)  Refuse to be a witness.
> (2)  Refuse to disclose any matter.
> (3)  Refuse to produce any object or writing.
> (4)  Prevent another from being a witness, from disclosing any matter, or from producing any object or writing.

the statute governs. *See Hill v. State*, 846 So. 2d 1208, 1212 (Fla. 5th DCA 2003) (footnotes omitted) ("In Florida, the marital communication privilege, although originally created by the common law, is a creature of statute. It is presently included as part of the Evidence Code. The Florida State courts accept the statute, as modified from time to time, as the sole source of the privilege.").

## A.

Appellant claims the trial court erred in admitting his statements made to Mr. Worden (in the presence of Mrs. Worden and the victim's mother) because they were protected by the clergy communications privilege. Appellant's argument fails.

Section 90.505, Florida Statutes, provides in part:

> (1) For the purposes of this section:
>
> (a) A "member of the clergy" is a priest, rabbi, practitioner of Christian Science, or minister of any religious organization or denomination usually referred to as a church, or an individual reasonably believed so to be by the person consulting him or her.
>
> (b) A communication between a member of the clergy and a person is "confidential" if made privately for the purpose of seeking spiritual counsel and advice from the member of the clergy in the usual course of his or her practice or discipline and not intended for further disclosure except to other persons present in furtherance of the communication.

7

(2) A person has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication by the person to a member of the clergy in his or her capacity as spiritual adviser.

§ 90.505(1)-(2), Fla. Stat. (2020). Thus, under this statute, four requirements exist for the privilege to attach: (1) Appellant must have made his statements to a "member of the clergy"; (2) Appellant must have made the statements for the purpose of seeking spiritual counseling or advice; (3) the clergyman must receive the statements in the usual course of his practice or discipline; and (4) Appellant must have made his statements privately and with the intent they not be further disclosed beyond those present in furtherance of the communication. *See Nussbaumer v. State*, 882 So. 2d 1067, 1074 (Fla. 2d DCA 2004); *see also Elliott v. State*, 49 So. 3d 795, 799 (Fla. 1st DCA 2010); *Cuevas*, 310 So. 3d at 65–66.

We need look no further than the first requirement. At the time of the statements by Appellant, Mr. Worden was not a member of the clergy, and no reasonable basis existed to believe he was a minister.[7] Appellant's suggestion that he spoke to Mr. Worden because Mr. Worden served in the church, that he was closer in age to Mr. Worden than the pastor of their

---

[7] Since Mr. Worden was not a member of the clergy at the time of Appellant's statements, it necessarily follows that Mr. Worden could not receive these statements in the usual course of his practice or discipline.

church, and that he believed the communications would be confidential, is insufficient to establish the protection of the privilege.

Mr. Worden himself testified he was not a pastor at that time. While he volunteered in their church as a layman who helped lead various ministries, Mr. Worden had not received his license. He was not a minister. Mr. Worden told Appellant he needed to speak to the pastor of their church because Appellant needed "real help." Mr. Worden spoke to and prayed with Appellant as a friend because he needed to make sure Appellant was "doing the right things" and because he did not want others hurt.[8] As such, the privilege does not attach to Appellant's statements to Mr. Worden, and the statements were properly admitted into evidence.

B.

Section 90.504, Florida Statutes, the husband-wife privilege statute, provides in part:

> (1) A spouse has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, communications

---

[8] Even if the Appellant could establish the first three requirements of the clergy communications privilege, he did not make these statements privately with the intent they not be further disclosed. Appellant made his statements to Mr. Worden with both the victim's mother and Mrs. Worden present. Appellant's assertion that Mrs. Worden and the victim's mother were present in furtherance of the communication is without merit. Accordingly, the statements were not made privately and, thus, would not be privileged. *See Fernandez*, 730 So. 2d at 282; *Cuevas*, 310 So. 3d at 65–66.

which were intended to be made in confidence between the spouses while they were husband and wife.

. . . .

(3) There is **no privilege** under this section:

. . . .

**(b) In a criminal proceeding in which one spouse is charged with a crime committed at any time against** the person or property of the other spouse, or **the person or property of a child of either.**

(c) In a criminal proceeding in which the communication is offered in evidence by a defendant-spouse who is one of the spouses between whom the communication was made.

§ 90.504, Fla. Stat. (2020) (emphasis added).

The plain text of the statute dictates and makes clear Appellant's admissions to his wife—the victim's mother—are not protected by the husband-wife privilege. In this criminal proceeding, Appellant was charged with and convicted of sexual battery against his step-daughter. The victim was his wife's child. Therefore, since Appellant committed this crime "against the person . . . of a child of either [spouse]"—i.e., the person of the daughter of his wife—there is no privilege as expressly stated by 90.504(3)(b), Florida Statutes. *See Hill*, 846 So. 2d at 1212–13.

10

## III.

Appellant's statements made to Mr. Worden, who was not a member of the clergy, were not protected by the clergy communications privilege. Further, Appellant's admissions to his wife were not shielded from disclosure by the husband-wife privilege. Accordingly, the trial court properly denied Appellant's motions and admitted his statements into evidence.

AFFIRMED.

It is so ordered.

WALLIS and HARRIS, JJ., concur.