392 So.2d 263 (1980)
John L. BRIGGS, As Attorney for Sheldon Cooper and Cooper-Fletcher & Associates, Inc., and John L. Briggs, As Interim Attorney for John Joseph, Appellant,
v.
E.J. SALCINES, As State Attorney in and for Hillsborough County, Florida, Appellee.
No. 80-898.
District Court of Appeal of Florida, Second District.
September 24, 1980.
Rehearing Denied November 20, 1980.
*264 John L. Briggs of Briggs & LaSpada, P.A., Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
In this case, attorney John L. Briggs seeks review of the denial of his motion to quash a subpoena requiring him to produce tape recordings in his possession which had been made by a client.
*265 This matter arose out of a civil lawsuit in which Sheldon Cooper and Cooper-Fletcher & Associates, Inc. were plaintiffs and Map F. Fletcher and others were defendants. Mr. Briggs represented the plaintiffs, while Gregory E. Mierzwinski represented Mr. Fletcher.
During the course of the lawsuit, Mr. Mierzwinski took the deposition of John Joseph. Mr. Joseph, who was associated with Sheldon Cooper, testified that he had tape recorded fifteen telephone conversations between himself, the defendant Fletcher, and some of Mr. Fletcher's associates. Mr. Joseph admitted that he did not tell Mr. Fletcher or any of the others that he was recording these conversations. He stated that the tape recordings were locked in the office of Sheldon Cooper.
On March 1, 1980, Mr. Briggs, acting on behalf of the plaintiffs in the lawsuit, filed a motion asking that the court impound the tapes because they might have been made in violation of the law. The motion also requested that the court order the tapes destroyed. On April 1, 1980, Mr. Mierzwinski reported the matter to the office of the Hillsborough County State Attorney, and on May 14, 1980, the judge presiding over the civil suit held a hearing on Mr. Briggs' motion. At this hearing, Mr. Briggs stated to the court that he was representing Mr. Joseph and that he had possession of the tapes. The court ordered Mr. Briggs to turn over the tapes to the state attorney.
Mr. Briggs did not give the tapes to the state attorney as ordered but asked for a rehearing. The court granted his request, and at the hearing that followed, attorney John E. Lund appeared representing Mr. Joseph and asked to intervene. The court ruled that the tapes were inadmissible in the civil proceedings and that, contrary to its earlier ruling, it would not order their production. Thereafter, the state attorney served Mr. Briggs and Mr. Lund with subpoenas duces tecum requiring the production of the tapes.
Mr. Briggs and Mr. Lund filed motions to quash the subpoenas, and a judge of the criminal division of the circuit court held a hearing on these motions. At this hearing, Mr. Lund represented to the court that Mr. Joseph had given the tapes to Mr. Briggs in the process of receiving legal advice from Mr. Briggs concerning them. He and Mr. Briggs then argued that since the recording of the tapes could be a violation of Florida law,[1] Mr. Joseph's Fifth Amendment right against self-incrimination protected him and Mr. Briggs, while acting as his attorney, from the forced production of the tapes. The court rejected this argument, denied the motions to quash and ordered production of the tape recordings. Subsequently, Mr. Briggs filed an appeal, and this court granted a motion to stay the trial court's order.
As a preliminary matter, we must examine the question of whether we have jurisdiction to consider this appeal. Ordinarily, an order denying a motion to quash a subpoena duces tecum is a nonfinal order. There is nothing in Florida Rule of Appellate Procedure 9.130, dealing with review of nonfinal orders, or in Florida Rule of Appellate Procedure 9.140, dealing with appeals in criminal cases, which would indicate that we have jurisdiction to review this type of order. Thus, we cannot treat the matter as an appeal. This does not end our inquiry, however, because we do have the power to treat an improperly filed appeal as a petition for writ of certiorari. See Goff v. General Motors Corp., 292 So.2d 594 (Fla.2d DCA 1974); Fla.R.App.P. 9.040. We think this case to be an appropriate matter for consideration by certiorari. See Imparato v. Spicola, 238 So.2d 503 (Fla.2d DCA 1970).
Of course, in order for us to grant the discretionary writ of certiorari, the order from which review is sought must be a departure from the essential requirements of the law and be such as to cause irreparable *266 harm which cannot be remedied on appeal. Wright v. Sterling Drugs, Inc., 287 So.2d 376 (Fla.2d DCA 1973). Taking the latter requirement first, we believe that in this case Mr. Briggs does not have an adequate remedy by appeal; if for no other reason, he is not a party to any proceedings in which a final judgment will be entered. The only other way in which he may test the court's order is to risk a contempt citation and then appeal if cited for contempt. We think that this is too great a price for him to have to pay in order to protect his client's interests.
We also think that the court's refusal to quash the subpoena departs from the essential requirements of the law. The leading case in this area and the one which controls the outcome here is Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). There, the Supreme Court faced a situation where an attorney had in his possession business records prepared for his client by the client's accountant and given to him by the client in the course of seeking legal advice. The government sought to compel the attorney's production of the records by subpoena, but the attorney resisted, asserting the client's Fifth Amendment privilege against self-incrimination and also his attorney-client privilege. The Court held that the attorney-client privilege would protect an attorney from the forced production of documents given to him by a client in the course of seeking legal advice if the documents were privileged in the hands of the client.[2] It then held that while the Fifth Amendment privilege against self-incrimination affords no protection to the contents of previously prepared documents, it does protect a person from producing documents under subpoena where the compelled production would amount to a forced testimonial communication which would be incriminating.[3]
In Fisher, the Court found that the forced production by a person of records prepared by his accountant did not rise to the level of testimonial communication. However, at least one later case, In re Grand Jury Proceedings, 626 F.2d 1051 (1st Cir.1980), has treated a situation where a person's response to a subpoena would have amounted to testimonial communication. There, a federal grand jury was seeking the appointment books of a doctor. The court said:
The line of cases culminating in Fisher have stripped the content of business records of any Fifth Amendment protection; such protection is afforded only to the testimonial content of the act of turning over the records under compulsion. Compliance with the subpoena may admit certain facts, such as the existence of the requested documents, which in most cases will be so trivial that the constitution is not implicated. In many cases, however, the authentication of the document, which may be proven by an official's testimony that he received them from the individual who prepared and possessed them, will provide a necessary link to incriminating evidence contained in the documents.
We have little hesitancy in agreeing with the district court that there is a sufficient probability that Dr. Rodriguez's compliance with the subpoena would produce incriminating authentication evidence. If the appointment logs disclose incriminating details about meetings with union officials, as the government suspects, the logs would need to be authenticated to be legally relevant. Because *267 the records were prepared under the doctor's direction and were in his possession, his submission of them to the government would constitute sufficient authentication to allow introduction of the records' content against him.
626 F.2d at 1055-56 (footnote and citations omitted).
Upon review, we have concluded that were the tapes[4] in Mr. Joseph's possession, the forced production of them would amount to compelled incriminating testimonial communication in that the production would serve as authentication that Mr. Joseph had made the tape recordings. Consequently, Mr. Joseph could assert the protection of the Fifth Amendment, and therefore, Mr. Briggs, by invoking the attorney-client privilege, cannot be compelled to produce the tapes.
We hereby issue a writ of certiorari and remand the case to the circuit court with instructions that it quash the state's subpoena.
SCHEB, C.J., and OTT, J., concur.
NOTES
[1] State v. Walls, 356 So.2d 294 (Fla. 1978), holds that Section 934.03, Florida Statutes (1979), prohibits the secret recording of a conversation by a party to that conversation. But see State v. Tsavaris, 382 So.2d 56 (Fla.2d DCA 1980), which urges the supreme court to revisit this issue.
[2] Because the extent of the attorney-client privilege is a matter of state law, we are not bound to follow the Supreme Court's holding in this regard. However, we are confident that Florida's attorney-client privilege as embodied in Section 90.502, Florida Statutes (1979), is broad enough to include the proposition which appears to be universally accepted that documents which are privileged in the hands of the client and which are given by the client to the attorney in the course of seeking legal advice remain privileged in the hands of the attorney. See 81 Am.Jur.2d Witnesses § 204 (1976).
[3] Apparently there are no Fifth Amendment implications in the seizure of the same documents pursuant to a valid search warrant. Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).
[4] We think that in this instance the tape recordings were in the nature of business records because they were made of conversations centering around the business disputes which led to the civil litigation in which Mr. Joseph became involved. Thus we need not consider the questions left open in Fisher and In re Grand Jury Proceedings as to whether personal records and memoranda should receive more protection under the Fifth Amendment.