882 So.2d 1067 (2004)
Joseph NUSSBAUMER, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. 2D03-5573.
District Court of Appeal of Florida, Second District.
August 27, 2004.
Rehearing Denied September 30, 2004.
*1069 Mathew D. Staver, Erik W. Stanley, Anita L. Staver, Joel L. Oster, and Rena M. Lindevaldsen of Liberty Counsel, Longwood, for Petitioner.
*1070 Charles J. Crist, Jr., Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Respondent.
WALLACE, Judge.
Joseph Nussbaumer, Jr., an ordained minister, petitions this court for a writ of certiorari to quash two orders of the circuit court that directed him to produce records and answer questions over the objection of clergy communications privilege, section 90.505, Florida Statutes (2003),[1] in a criminal prosecution pending against Mr. Lowell Bloom. We hold that the circuit court's orders departed from the essential requirements of the law, causing material injury to Pastor Nussbaumer from which there is no adequate remedy on appeal. Because the start of Mr. Bloom's trial was imminent, we granted the petition and quashed the circuit court's orders by a prior unpublished order. We issue this opinion to explain our ruling.

THE PROCEEDINGS IN THE CIRCUIT COURT
Mr. Bloom, who is an adult, was charged with committing the offense of lewd or lascivious molestation on a child, a violation of section 800.04(5), Florida Statutes.[2] On or about June 20, 2003, the State caused a subpoena for records to be issued and served on Pastor Nussbaumer for "any and all records relating to treatment and or counseling from 06/01/02 to present date of LOWELL BLOOM ... relating to his involvement with sexual abuse of a child." Pastor Nussbaumer declined to produce the requested records and notified the State Attorney that he objected to producing the records or giving testimony based on the clergy communications privilege. On July 17, 2003, Mr. Bloom's counsel filed a motion to quash the subpoena pursuant to section 90.503, the psychotherapist-patient privilege. The State responded by filing a motion to compel compliance with its investigative subpoena and scheduled a hearing on the motion for August 14, 2003. The State issued and served a subpoena on Pastor Nussbaumer requiring his appearance at the scheduled hearing.
Pastor Nussbaumer did not appear at the hearing as scheduled. On the day of the scheduled hearing, he faxed a letter to the circuit court. Pastor Nussbaumer explained in his letter that he had been on vacation and had discovered that personal commitments had prevented his attorney from filing a motion for protective order as Pastor Nussbaumer had previously requested. Pastor Nussbaumer informed the circuit court that he requested "the Order of Protection as an Ordained Minister." He also enclosed a copy of his certificate of ordination. The circuit court issued a rule to show cause requiring Pastor Nussbaumer to appear before the court on September 19, 2003, and show cause why he should not be held in contempt of court. On September 19, 2003, Pastor Nussbaumer appeared before the court as directed. The circuit court adjudged Pastor Nussbaumer to be in contempt of court but *1071 withheld disposition pending a further hearing.
On October 29, 2003, the circuit court conducted an evidentiary hearing on Mr. Bloom's motion to quash and on the State's motion to compel compliance with its investigative subpoena. Although Mr. Bloom claimed the benefit of the psychotherapist-patient privilege in his motion to quash the subpoena, at the hearing he claimed that his communications with Pastor Nussbaumer were protected by the clergy communications privilege. This was consistent with Pastor Nussbaumer's previously stated position. Pastor Nussbaumer had maintained from his receipt of the State's initial subpoena that the applicable privilege was the clergy communications privilege, not the psychotherapist-patient privilege. The State made no objection based on the change in the defense theory.
Both Pastor Nussbaumer and Mr. Bloom testified at the hearing. On November 18, 2003, the circuit court entered an order that made the following findings of fact:
1. The communications between Joseph Nussbaumer and Defendant took place within a psychotherapist-patient relationship. In light of the fact that Defendant is charged with lewd molestation (pursuant to [section 800.04]), [section 39.204, Florida Statutes (2003)] abrogates the psychotherapist-patient privilege which was enacted pursuant to [section] 90.503. Therefore, the communications between Nussbaumer and Defendant are not protected by the psychotherapist-patient privilege.
2. The Court rejects Defendant's contention that his communications with Nussbaumer took place within a clergyman-penitent relationship. Therefore, the communications are not protected pursuant to the clergyman-penitent privilege ([section] 90.505).
Based on these findings, the circuit court denied Mr. Bloom's motion to quash the subpoena and granted the State's motion to compel compliance with its investigative subpoena. Once again, the circuit court deferred imposing any sanctions for contempt of court on Pastor Nussbaumer.
After the conclusion of the October 29 hearing, the State issued a third subpoena to Pastor Nussbaumer. The third subpoena directed him to appear personally at the State Attorney's office on December 3, 2003, and to produce the records concerning Mr. Bloom that had previously been subpoenaed. Pastor Nussbaumer then retained counsel and filed a motion for protective order and/or stay pending appeal. In this motion, Pastor Nussbaumer reasserted the clergy communications privilege and requested an order protecting him from being required to comply with the State's subpoena. On November 25, 2003, the circuit court found that there was no reason to recede from its previous order and entered the second order that denied the motion for a protective order. However, in order to give Pastor Nussbaumer an opportunity to seek review in this court, the circuit court granted the motion for stay pending review. Pastor Nussbaumer timely filed his petition for a writ of certiorari in this court.

THE AVAILABILITY OF RELIEF BY CERTIORARI
A petition for writ of certiorari is appropriate to review a discovery order when the order departs from the essential requirements of law, causing material injury throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal. Allstate Ins. Co. v. Langston, 655 So.2d 91 (Fla.1995). *1072 To determine whether a reviewing court has jurisdiction, the court must first decide whether the petitioner has demonstrated that the order complained of creates irreparable harm. Morgan, Colling & Gilbert, P.A. v. Pope, 798 So.2d 1 (Fla. 2d DCA 2001). In this case, Pastor Nussbaumer does not have an adequate remedy by appeal because he is not a party to the circuit court proceedings. As we stated in Briggs v. Salcines, 392 So.2d 263 (Fla. 2d DCA 1980), the only way that a nonparty claiming privilege may test a court's order-other than by certiorari-is to risk a contempt citation and then to appeal if cited for contempt. However, this is "too great a price" to require Pastor Nussbaumer to pay. See id. at 266. Thus Pastor Nussbaumer has demonstrated that the challenged orders create the potential for irreparable harm. Because Pastor Nussbaumer has satisfied the jurisdictional threshold, our task is to determine whether there has been a departure from the essential requirements of the law. See City of Oldsmar v. Kimmins Contracting Corp., 805 So.2d 1091, 1092 (Fla. 2d DCA 2002). The entry of an order compelling the disclosure of communications protected by a legal privilege is a departure from the essential requirements of the law. See Superior Ins. Co. v. Cano, 829 So.2d 991 (Fla. 2d DCA 2002) (trade secrets); Robichaud v. Kennedy, 711 So.2d 186 (Fla. 2d DCA 1998) (attorney-client privilege); Hill v. State, 846 So.2d 1208 (Fla. 5th DCA 2003) (psychotherapist-patient privilege).

THE IMPACT OF SECTION 39.204
With the exceptions of the attorney-client privilege and the clergy communications privilege, section 39.204 abrogates the various evidentiary privileges in cases involving child abuse, abandonment, or neglect. Section 39.204 provides as follows:
The privileged quality of communication between husband and wife and between any professional person and his or her patient or client, and any other privileged communication except that between attorney and client or the privilege provided in s. 90.505, as such communication relates both to the competency of the witness and to the exclusion of confidential communications, shall not apply to any communication involving the perpetrator or alleged perpetrator in any situation involving known or suspected child abuse, abandonment, or neglect and shall not constitute grounds for failure to report as required by s. 39.201 regardless of the source of the information requiring the report, failure to cooperate with law enforcement or the department in its activities pursuant to this chapter, or failure to give evidence in any judicial proceeding relating to child abuse, abandonment, or neglect.
"Abuse" is defined in chapter 39 as "any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." § 39.01(2). "Child" is defined as "any unmarried person under the age of 18 years who has not been emancipated by order of the court." § 39.01(12). Chapter 39 provides further: "`Harm' to a child's health or welfare can occur when any person ... [c]ommits, or allows to be committed, sexual battery as defined in chapter 794, or lewd or lascivious acts, as defined in chapter 800, against the child." § 39.01(30)(b). Based on our limited record, we assume for purposes of this review that the alleged victim in this case is an unmarried person under the age of eighteen years who has not been emancipated by order of the court. Mr. Bloom is charged with the offense of lewd or lascivious molestation against a child in violation of section 800.04(5), an offense that qualifies as *1073 "abuse" under chapter 39. Therefore, if the trial court correctly concluded that the communications between Mr. Bloom and Pastor Nussbaumer occurred within a psychotherapist-patient relationship, those communications were not privileged to the extent that they related to or concerned "any situation involving known or suspected child abuse" as defined in chapter 39.
On the other hand, the result is different if the clergy communications privilege applies. The abrogation of the evidentiary privileges in cases involving child abuse, abandonment, or neglect provided for in section 39.204 has an exception for cases in which the clergy communications privilege is applicable. The exception to the abrogation of the evidentiary privileges in section 39.204 for clergy communications was added to the statute in 1985. Ch. 85-28, § 2 at 97, Laws of Fla.[3] Therefore, if the clergy communications privilege applied, Pastor Nussbaumer could not be compelled to disclose his records or to testify to his communications with Mr. Bloom even if the communications extended to matters involving child abuse, neglect, or abandonment. The clergy communications privilege contains no exceptions to its application. State v. Pinder, 678 So.2d 410, 414 (Fla. 4th DCA 1996).
Although the circuit court did not make an express finding on the point, its ruling assumes that Pastor Nussbaumer was a "psychotherapist" within the meaning of section 90.503(1)(a) of the psychotherapist-patient privilege. For purposes of this evidentiary privilege, a "psychotherapist" is:
1. A person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, who is engaged in the diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addiction;
2. A person licensed or certified as a psychologist under the laws of any state or nation, who is engaged primarily in diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addiction;
3. A person licensed or certified as a clinical social worker, marriage and family therapist, or mental health counselor under the laws of this state, who is engaged primarily in the diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addiction; or
4. Treatment personnel of facilities licensed by the state pursuant to chapter 394, chapter 395, or chapter 397, of facilities designated by the Department of Children and Family Services pursuant to chapter 394 as treatment facilities, or of facilities defined as community mental health centers pursuant to s. 394.907(1) who are engaged primarily in the diagnosis or treatment of a mental or emotional condition, including alcoholism and other drug addiction.
The evidence presented at the evidentiary hearing held on October 29, 2003, would not support a finding of fact that Pastor *1074 Nussbaumer qualified as a "psychotherapist" for purposes of the psychotherapist-patient privilege. In fact, the evidence strongly supports the opposite conclusion. Pastor Nussbaumer was not authorized to practice medicine, nor did Mr. Bloom testify that he believed him to be so authorized. Pastor Nussbaumer testified that he was not licensed by the State of Florida as a psychologist. There was no evidence presented that Pastor Nussbaumer was licensed or certified as a clinical social worker, marriage and family therapist, or mental health counselor under the laws of the State of Florida. Pastor Nussbaumer was not shown to be one of the "treatment personnel" at any of the facilities described in section 90.503(1)(a)(4). Therefore, to the extent that the circuit court found that Pastor Nussbaumer qualified as a "psychotherapist" for purposes of the psychotherapist-patient privilege, we reject that finding because it is not supported by competent, substantial evidence.
Neither party has addressed this point directly in their submissions to this court. We will review the circuit court's orders on the basis of our conclusion that Pastor Nussbaumer was not a "psychotherapist" for purposes of the psychotherapist-patient privilege recognized in section 90.503.

SECTION 90.505 AND ITS FOUR REQUIREMENTS
Florida's version of the clergy communications privilege is set forth in section 90.505, which provides as follows:
(1) For the purposes of this section:
(a) A "member of the clergy" is a priest, rabbi, practitioner of Christian Science, or minister of any religious organization or denomination usually referred to as a church, or an individual reasonably believed so to be by the person consulting him or her.
(b) A communication between a member of the clergy and a person is "confidential" if made privately for the purpose of seeking spiritual counsel and advice from the member of the clergy in the usual course of his or her practice or discipline and not intended for further disclosure except to other persons present in furtherance of the communication.
(2) A person has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication by the person to a member of the clergy in his or her capacity as spiritual adviser.
(3) The privilege may be claimed by:
(a) The person.
(b) The guardian or conservator of a person.
(c) The personal representative of a deceased person.
(d) The member of the clergy, on behalf of the person. The member of the clergy's authority to do so is presumed in the absence of evidence to the contrary.
Section 90.505 has four requirements that must be satisfied in order for the clergy communications privilege to be applicable. First, the communication must be made to a "member of the clergy" as defined in the statute. Second, the confider must make the communication for the purpose of seeking spiritual counseling and advice. Third, the clergy member must receive the communication in the usual course of his or her practice or discipline. Fourth, the communication must be made privately and must not be intended for further disclosure except to other persons present in furtherance of the communication. With these requirements in mind, we turn now to an analysis of whether Mr. Bloom's communications made to Pastor Nussbaumer enjoy the benefit of the clergy communications privilege.

*1075 ANALYSIS

1. To a Member of the Clergy

The evidence presented at the evidentiary hearing established that Pastor Nussbaumer has been the pastor at the Groveland Free Church in Groveland, Lake County, Florida, since 1969. He was ordained by that church as a minister of the gospel in 1977. A copy of his certificate of ordination appears in the record. Pastor Nussbaumer is recognized as a member of the clergy by the Lake County Department of Corrections. Pastor Nussbaumer's duties at his church include preaching at Sunday services, providing spiritual and administrative leadership, and pastoral counseling. Based on these facts, Pastor Nussbaumer's status as "a member of the clergy" within the meaning of section 90.505(1)(a) was established.

2. For the Purpose of Seeking Spiritual Counsel and Advice

The clergy communications privilege does not apply unless the confider consults the member of the clergy "for the purpose of seeking spiritual counsel or advice." § 90.505(1)(b). No reported Florida decisions address this requirement of the privilege. Courts from other jurisdictions have interpreted similar statutory provisions to exclude from the operation of the privilege communications made for purposes not related to religious or spiritual concerns. E.g., Magar v. State, 308 Ark. 380, 826 S.W.2d 221 (1992) (finding privilege inapplicable to defendant's admission to minister's accusation of sexual abuse of minors where conversation was initiated by minister for disciplinary purposes and not for spiritual counseling); Burger v. State, 238 Ga. 171, 231 S.E.2d 769 (1977) (holding defendant could not claim privilege concerning conversational statements to clergy member who was his friend and frequent companion concerning defendant's intent to kill his wife and her lover); Keenan v. Gigante, 47 N.Y.2d 160, 417 N.Y.S.2d 226, 390 N.E.2d 1151 (1979) (finding privilege inapplicable to defendant's communications to priest where the communications were made for purpose of securing defendant's entrance into a work release program). The common thread in such cases "is that the privilege may not be invoked to enshroud conversations with wholly secular purposes solely because one of the parties to the conversation happened to be a religious minister." People v. Carmona, 82 N.Y.2d 603, 606 N.Y.S.2d 879, 627 N.E.2d 959, 962 (1993).
In this case, Mr. Bloom testified that when he decided to seek counseling, he first consulted Pastor Phillips, the clergyman at the church where Mr. Bloom was a member. Pastor Phillips referred Mr. Bloom to Pastor Nussbaumer for "Christian counseling." Mr. Bloom understood Pastor Nussbaumer's role as that of "a Christian Pastor that was a counselor." Concerning his purpose in seeking counseling, Mr. Bloom testified:
Well I wanted to find out if I had a problem for one thing. And then I wanted Christian counseling because I uh,  I believe that is the way it is  I don't understand the other kind of counseling. We had Bible study and like I would get homework and stuff. And I would do things he would give me literature and stuff he gave me about the Bible. And I would go into the Bible in reference to my living and whatI 
....
... I liked the [idea] of using text out of the Bible for Christian counseling. And then taking it and referencing it to your everyday life or your problems or whatever the case maybe [sic]. Like a Bible study that is exactly what it amounted to.
*1076 Mr. Bloom's counseling sessions with Pastor Nussbaumer were conducted either in the church itself or in an office on the church grounds. A substantial portion of the counseling sessions was devoted to prayer and to the study of the Bible. Mr. Bloom expressed the view that the Christian aspect of the counseling sessions with Pastor Nussbaumer had been very beneficial to him.
There is no evidence in the record that Mr. Bloom consulted Pastor Nussbaumer for secular purposes. On the contrary, the only competent, substantial evidence in the record establishes that Mr. Bloom consulted Pastor Nussbaumer specifically for spiritual counsel and advice. Thus the second requirement of the privilege was met.

3. In the Usual Course of His or Her Practice or Discipline

The requirement that the communication be made to the member of the clergy "in the usual course of his or her practice or discipline" has also not been the subject of any reported Florida decisions. Similar requirements in the clergy communications privileges of other jurisdictions have been referred to as the "discipline enjoined" requirement. See R. Michael Cassidy, Sharing Sacred Secrets: Is it (Past) Time for a Dangerous Person Exception to the Clergy-Penitent Privilege?, 44 Wm. & Mary L.Rev. 1627, 1640-44 (2003). One of the purposes of the discipline enjoined requirement is to expand the scope of the privilege so that it is not limited only to those religious traditions that require formal confession. See id.; Ronald J. Colombo, Forgive Us Our Sins: The Inadequacies of the Clergy-Penitent Privilege, 73 N.Y.U. L.Rev. 225, 233-34 (1998); Mary Harter Mitchell, Must Clergy Tell? Child Abuse Reporting Requirements versus the Clergy Privilege and Free Exercise of Religion, 71 Minn. L.Rev. 723, 747-50 (1987). Although the interpretation of the discipline enjoined requirement is by no means uniform, the modern trend is to interpret it as requiring only that the confider consulted the clergy member in his or her professional capacity. See, e.g., In re Swenson, 183 Minn. 602, 237 N.W. 589 (1931); see also Cassidy, 44 Wm. & Mary L.Rev. at 1640-44; Colombo, 73 N.Y.U. L.Rev. at 233-34; Mitchell, 71 Minn. L.Rev. at 747-50.
The evidence presented at the hearing established that Mr. Bloom's pastor referred him to Pastor Nussbaumer. Mr. Bloom was not only aware of Pastor Nussbaumer's role as a clergy member, he sought him out precisely for that reason. Pastor Nussbaumer saw Mr. Bloom in a professional capacity. Their counseling sessions were conducted either in the church itself or in an office on the church property. Pastor Nussbaumer testified that his regular duties included pastoral counseling and that he regarded it as his duty to hold in "absolute" confidence the matters entrusted to him by those persons he counseled, including Mr. Bloom. Under these circumstances, Mr. Bloom's communications to Pastor Nussbaumer were made in the usual course of the pastor's practice or discipline.
Although we conclude that Mr. Bloom's communications to Pastor Nussbaumer were made in the usual course of the pastor's practice or discipline, it is appropriate to examine the State's arguments with regard to this requirement. The State frames the issue we are called upon to decide as "whether, upon the evidence presented to the trial court, Pastor Nussbaumer was performing as a psychotherapist or as a pastor." The State asserts that because Pastor Nussbaumer was acting as a psychotherapist in his counseling sessions with Mr. Bloom, the clergy communications *1077 privilege does not apply. We reject the State's formulation of the issue before us for several reasons.[4]
First, pursuant to the clergy communications privilege, the relevant inquiry is what Mr. Bloom sought rather than the nature of Pastor Nussbaumer's response. See Cox v. Miller, 296 F.3d 89, 110 (2d Cir.2002). As we have seen, Mr. Bloom sought spiritual advice and counsel from Pastor Nussbaumer. Therefore, provided that the other requirements of the privilege are satisfied, the privilege applies and the inquiry is at an end. It is not necessary to examine Pastor Nussbaumer's response and place it in the appropriate pigeonhole.
Second, the State's approach would require the circuit court to review and interpret Pastor Nussbaumer's message in order to determine whether it was spiritually based counseling or secular psychotherapy. Depending upon the circumstances, such a task might be difficult, if not impossible. Psychotherapy may be defined as "[t]he treatment of mental and emotional disorders through the use of psychological techniques designed to encourage communication of conflicts and insight into problems, with the goal being relief of symptoms, changes in behavior leading to improved social and vocational functioning, and personality growth." The American Heritage Dictionary of the English Language 1415 (4th ed.2000). We need not devalue religion to recognize that there are probably many instances in which it would be difficult to distinguish a call to personal growth based on a spiritual message from one that is only psychotherapeutic in origin. And if, as we would anticipate, the call to personal growth incorporates elements of the spiritual and the secular, what then? The State's approach poses an array of overwhelming practical problems to the application of the clergy communications privilege. Fortunately, section 90.505 does not require the courts to assess the spiritual content of the clergy member's response to the confider's request for spiritual advice and counsel.
Third, the State's approach runs afoul of the ecclesiastical abstention doctrine. Pursuant to the ecclesiastical abstention doctrine, courts do not interpret religious doctrine or otherwise inquire into matters involving religious dogma. Southeastern Conference Ass'n of Seventh-Day Adventists, Inc. v. Dennis, 862 So.2d 842, 843-44 (Fla. 4th DCA 2003); Goodman v. Temple Shir Ami, Inc., 712 So.2d 775, 777 (Fla. 3d DCA 1998). The judicial review of the clergy member's message required by the State's approach would likely involve an interpretation of religious doctrine in violation of the ecclesiastical abstention doctrine. We decline to interpret section 90.505 in a way that would lead to such an interpretation of religious doctrine.
In further support of its position, the State has directed our attention to a facsimile cover sheet and a letter that Pastor Nussbaumer sent to the circuit court upon receipt of a subpoena duces tecum from the State Attorney's Office in the criminal prosecution pending against Mr. Bloom. The cover sheet described Pastor Nussbaumer's organization as "GFC Counseling"; the letter referred to it as "G.F.C. Family and Crisis `Counseling.'" The letterhead on the letter refers to Pastor Nussbaumer as "Joseph Wm. Nussbaumer, Jr., Ph.D.," and his credentials listed include the designation "Clinical Christian Psychologist." In the letter to the court, Pastor Nussbaumer stated that Mr. Bloom *1078 was referred to him by another pastor for "assessment." The record also reflects that Pastor Nussbaumer administered several psychological tests to Mr. Bloom at one of their initial meetings.
Pastor Nussbaumer testified at the evidentiary hearing that he held a Ph.D. in "clinical Christian psychology." Nevertheless, he also testified that he did not hold a license from the State of Florida to practice psychology. Pastor Nussbaumer was "licensed" as a clinical Christian psychologist by the Florida Association of Christian Counselors and Therapists (F.A.C.C.T.). Pastor Nussbaumer explained that F.A.C.C.T. is a nonprofit organization dedicated to developing and applying biblically based models of counseling and therapy that are supported by sound psychological concepts. He explained further that the initials "GFC" in GFC Counseling were a dual acronym for Groveland Free Church Counseling and Groveland Family Counseling Center. Pastor Nussbaumer also testified that the GFC Counseling office was located in a building on the church property and that GFC Counseling was a part of the Church's ministry. Based on these facts, the State contends that the counseling portion of Pastor Nussbaumer's ministry is secular psychotherapy rather than pastoral counseling. The State contends further that the facts of Pastor Nussbaumer's training and practice in the field of clinical psychology compel the conclusion that he was acting as a psychotherapist and not as a member of the clergy in his counseling sessions with Mr. Bloom. We disagree.
Initially, we note that it is not unusual for a member of the clergy to hold an advanced degree in such traditionally secular disciplines as psychology, sociology, philosophy, or even law. We are not willing to assume that a member of the clergy who has attained such an advanced degree is thereby rendered incapable of responding appropriately to a request for spiritual advice and counsel. It would be antithetical to the purpose of the clergy communications privilege if a clergy member's attainment of an advanced degree in a subject other than religion, theology, or divinity could strip the confider of the benefit of the clergy communications privilege or make another privilege applicable in its stead regardless of the confider's original purpose. Yet this would be the logical result of the State's position.
More to the point, we also note that licensing requirements for persons performing psychological services and clinical, counseling, and psychotherapy services contain express exemptions for clergy members. §§ 490.014(2)(f), 491.014(3). These exemptions are indicative of the legislature's intention to permit members of the clergy to perform pastoral counseling that might otherwise be characterized as psychological or psychotherapeutic services without being denominated as "psychologists" or "psychotherapists." Such pastoral counseling is not inconsistent with clerical status. Friedman v. State, 825 So.2d 1063 (Fla. 4th DCA 2002). Thus the State's division of pastoral counseling functions into the "spiritual" and the "psychotherapeutic" is a false dichotomy. Pastor Nussbaumer was a member of the clergy. Because Mr. Bloom consulted him for spiritual advice and counseling in the usual course of his practice and discipline, the clergy communications privilege applies.

4. Made Privately and Not Intended for Further Disclosure

In order for the privilege to apply, the communication to the clergy member must be made "privately." Thus the presence of a third person or persons not present in furtherance of the communication when the communication is made *1079 renders the privilege inapplicable. Fernandez v. State, 730 So.2d 277, 282 (Fla.1999). Similarly, a communication to a member of the clergy is not confidential and not privileged if it is intended to be communicated to others. Bottoson v. State, 443 So.2d 962, 965 (Fla.1983).
In this case, the evidence established that no third persons were ever present during Pastor Nussbaumer's counseling sessions with Mr. Bloom. There was no evidence that Mr. Bloom made any communications to Pastor Nussbaumer with the intent that the information be disclosed to someone else. Pastor Nussbaumer's practice of holding communications made to him during counseling sessions in "absolute" confidence has previously been mentioned. Mr. Bloom testified that Pastor Nussbaumer had assured him that their conversations would be private and confidential. Thus the fourth and final requirement for the applicability of the privilege was satisfied.

NO MEMBERSHIP REQUIREMENT
The State also suggests that Mr. Bloom was not entitled to the benefit of the clergy communications privilege because he was not a member of Pastor Nussbaumer's church. The State cites no authority for this proposition. Section 90.505 does not include a requirement that the confider be a member of the clergy member's church in order for the privilege to apply. Our independent research has not disclosed any reported Florida cases that have addressed the point. The fact that the confider is not a member of the church of the clergy member consulted may be one circumstance among others relevant to the determination of the spiritual purpose or the discipline enjoined requirements of the privilege. See, e.g., Johnson v. Commonwealth, 310 Ky. 557, 221 S.W.2d 87, 89 (1949). However, the modern trend of authority does not support a requirement that the confider be a member of the clergy member's church in order for the confider to claim the benefit of the privilege. E.g., In re Swenson, 237 N.W. at 591 (dicta); Kohloff v. Bronx Sav. Bank, 37 Misc.2d 27, 233 N.Y.S.2d 849, 850 (N.Y.Civ.Ct.1962); Kruglikov v. Kruglikov, 29 Misc.2d 17, 217 N.Y.S.2d 845, 846 (N.Y.Sup.Ct.1961); State v. Potter, 197 W.Va. 734, 478 S.E.2d 742, 755 n. 23 (1996) (dicta); see generally Mitchell, 71 Minn. L.Rev. at 745. Taking into account the absence of a membership requirement in section 90.505 and the trend in the modern authority to dispense with such a requirement, we hold that Mr. Bloom was entitled to claim the benefit of the privilege despite the fact that he was not a member of Pastor Nussbaumer's church.

CONCLUSION
The foregoing analysis determines that Mr. Bloom's communications to Pastor Nussbaumer met each of the four requirements for the application of the clergy communications privilege. In addition, we conclude that the psychotherapist-patient privilege does not apply. Because the communications between Mr. Bloom and Pastor Nussbaumer  including any records relating to them  are privileged as a matter of law pursuant to the clergy communications privilege, we conclude that the circuit court departed from the essential requirements of the law by denying Mr. Bloom's motion to quash the State's subpoena and granting the State's motion to compel. Furthermore, because the circuit court's order denying Pastor Nussbaumer's motion for protective order was based on its earlier order denying the motion to quash the subpoena, that order also departed from the essential requirements of the law. Therefore, we grant the *1080 petition for writ of certiorari and quash both orders.
Petition granted.
DAVIS and CANADY, JJ., Concur.
NOTES
[1] The privilege has been referred to variously as the "priest-penitent" privilege, the "cleric-congregant" privilege, the "clergy-congregant" privilege, the "clergy-communicant" privilege, and the "ministerial" privilege. In accordance with the title of section 90.505, we will refer to the privilege as the "clergy communications" privilege. We will refer to a person who consults a member of the clergy as "the confider."
[2] The date of the offense is not apparent from the face of the record. However, section 800.04(5) has not been the subject of recent amendments, and its terms are not material to the resolution of this case. Thus the applicable statutory year is not relevant.
[3] Part of the impetus for the amendment to the statute was the case of John Mellish, who was the minister of the Margate Church of the Nazarene in Broward County, Florida. Reverend Mellish was cited for contempt and jailed briefly in 1984 after he refused to testify concerning communications made to him by a parishioner accused of sexually abusing a child. See Fla. H. Comm. on Jud., HB 136 (1985) Staff Analysis (revised April 5, 1985) (archives); see also Shane D. Cooper, Chaplains Caught in the Middle: The Military's "Absolute" Penitent-Clergy Privilege Meets State "Mandatory" Child Abuse Reporting Laws, 49 Nav. L.Rev. 128, 145 (2002); Donald I. Pollock, To Tell or Not to Tell: What a Lawyer Should Know About Florida's Clergy Privilege, 62 Fla. B.J. 19, 21 (April 1988).
[4] In considering the State's argument, we have assumed that Pastor Nussbaumer was, at least in part, providing psychotherapeutic services to Mr. Bloom.