954 So.2d 97 (2007)
Douglas PRICE, D.C., Petitioner,
v.
Richard Warren HANNAHS and Ruth Elsenbernd Hannahs, Respondents.
No. 2D05-4882.
District Court of Appeal of Florida, Second District.
April 20, 2007.
*98 Michael C. Addison of Addison & Delano, P.A., Tampa, for Petitioner.
Rachel P. Ray of Hengber, Goldstein & Ray, P.A., Orlando, for Respondents.
NORTHCUTT, Judge.
In a petition for a writ of certiorari, Douglas Price asks this court to quash an order that imposes a sanction on him and compels him to produce documents. In part, we treat the certiorari proceeding as an appeal, and we reverse the monetary sanction. As for the remainder of Dr. Price's complaints, we grant the petition in part and quash the portion of the order that requires him to produce documents. In all other respects, the petition is denied.
Dr. Price, a chiropractor, is an expert witness for Yves Georges, who has sued Richard and Ruth Hannahs for injuries he claims to have suffered in an automobile accident. In the underlying litigation, the Hannahs have been provided defense counsel by their insurer, State Farm. It so happens that State Farm has an ongoing dispute with Dr. Price regarding his billings for treating other State Farm insureds. In fact, during the course of this litigation, State Farm sent Dr. Price a civil theft demand letter that claimed treble damages of over $1.8 million and accused Dr. Price of obtaining PIP and medpay payments from State Farm for services that were not rendered, were unlawfully upcoded or unbundled, or were based on fabricated medical records. Given just that brief background, it is no surprise that defense counsel encountered difficulties when attempting to depose Dr. Price in this case.
State Farm's subpoena duces tecum for Dr. Price's first deposition had an attached "Schedule A." This schedule called for Dr. Price to produce thirty categories of documents, almost entirely related to the plaintiff's treatment, billing charges, and payments. When Dr. Price appeared for his deposition, he was not entirely forthcoming with the subpoenaed documents. For example, when defense counsel asked if Dr. Price had brought the sign-in sheets for dates that the plaintiff was treated, Dr. Price said that they were available but that he had not had time to have them copied  even though his deposition had been set some three months earlier. For another example, Dr. Price produced a ledger of charges for the plaintiff's treatment that he admitted was not up to date. After an hour, things grew heated and Dr. Price refused to continue.
Defense counsel then filed a verified motion for an order to show cause and for sanctions. The motion asserted that Dr. Price became loud and aggressive during his deposition, that he failed to produce the requested documents, and that he unilaterally terminated the deposition. For his part, Dr. Price complained that he had not been paid for the deposition. See Fla. R. Civ. P. 1.280(b)(4)(C) (requiring generally that party seeking discovery from an expert pay a reasonable fee). Dr. Price also contended that State Farm was trying to harass him. Given her belief that Dr. Price had engaged in billing irregularities, defense counsel responded that she was allowed to investigate the legitimacy of the bills for Dr. Price's treatment of the plaintiff. Defense counsel also informed the court that Dr. Price and the plaintiff are involved in a business enterprise whereby Dr. Price gives coupons to his patients that are honored at the plaintiff's restaurant and then redeemed by Dr. Price. According to defense counsel, the business *99 relationship supported a more extensive inquiry into this expert witness's affairs, although none of the documents requested in Schedule A appear to be related to this relationship.
The court reserved on sanctions and instructed Dr. Price to appear for his next scheduled deposition and answer the questions. He also directed the parties to return to court if they were unable to agree on an hourly rate for Dr. Price's time. Defense counsel offered to prepare an order, but it appears that no order was ever entered.
For the next deposition, defense counsel's amended subpoena duces tecum required Dr. Price to produce additional documents set forth on an attached "Schedule B." This list, comprising thirty-nine categories, again included many documents relating in some way to the plaintiff's treatment, but none relating to the coupon business. Some categories did not relate to this plaintiff's treatment, but appeared designed to ferret out the expert's general bias for a particular side in litigation. For example, the last fifteen categories asked for any documents, notes, information or evidence substantiating the percentage of Dr. Price's expert witness work that was performed for plaintiffs as opposed to defendants; the percentage of his patients with personal injury claims or suits, or that were involved in automobile versus other types of accidents; the percentage of Dr. Price's income earned and time spent as an expert witness; and the number of Dr. Price's patients who were represented by this plaintiff's counsel or his firm.
Defense counsel prepaid for two hours of Dr. Price's time and expected him to bill for his additional time. But, again, Dr. Price terminated the deposition after two hours and, again, after he failed to produce all of the requested documents. After the deposition was terminated, defense counsel returned to her office. There, she found Dr. Price's written response to the document request, which had been mailed before the deposition but apparently was not mentioned during the deposition. In his response, Dr. Price agreed to produce many documents or claimed that he had previously produced them, but he objected on various grounds to the production of other documents. Most of the objections were directed to documents listed in Schedule B. In response to many of the document requests, Dr. Price asserted that he did not track the requested information and did not calculate the requested statistics.
Defense counsel returned to the circuit court, this time with an unverified motion for an order to show cause and for sanctions. After a hearing, the court ordered Dr. Price to appear again for deposition and to remain until dismissed by defense counsel. Defense counsel was ordered to pay Dr. Price for four hours, and Dr. Price was ordered to submit an invoice for any additional time. Without ruling on any of Dr. Price's objections to the requested documents, the circuit court ordered him to produce all documents requested in Schedules A and B. Finally, Dr. Price was ordered to pay defense counsel $1500. The court did not make any factual findings regarding Dr. Price's conduct, and it did not find Dr. Price to be in contempt.
We begin with the imposition of the $1500 sanction. This portion of the order responded to defense counsel's request for the court to hold Dr. Price in contempt. See Fla. R. Civ. P. 1.380(b)(1) (providing contempt as remedy for deponent who fails to answer question after being directed to answer by court); see also Pevsner v. Frederick, 656 So.2d 262 (Fla. 4th DCA 1995) (concluding, based on Fla. R. Civ. P. 1.380, that discovery sanctions may only be imposed against expert *100 witnesses when they are found in contempt). We review contempt orders against nonparties by appeal rather than certiorari. See Nussbaumer v. State, 882 So.2d 1067, 1072 (Fla. 2d DCA 2004) (noting that a nonparty may appeal if cited for contempt); Shook v. Alter, 715 So.2d 1082 (Fla. 4th DCA 1998) (redesignating certiorari petition as appeal for review of contempt order); compare Fla. R.Crim. P. 3.840(f) (requiring court to enter judgment of guilt for indirect criminal contempt), with Fla. R.App. P. 9.140(b)(1)(A) (allowing appeal of final judgment of guilt).
We deal here with criminal contempt because the purpose of the fine was to punish Dr. Price rather than to coerce his compliance; the order contained no purge provision permitting Dr. Price to avoid paying the fine. See Pugliese v. Pugliese, 347 So.2d 422, 425 (Fla.1977) (describing civil contempt as a method of coercing compliance while criminal contempt operates as a punishment). Because the offending conduct took place outside the presence of the court, any contempt at issue here would be indirect. See id. Indirect criminal contempt requires a judgment of guilt that recites the facts constituting the contempt. Fla. R.Crim. P. 3.840(f); see also Hagerman v. Hagerman, 751 So.2d 152 (Fla. 2d DCA 2000) (reversing order that failed to recite factual basis for contempt). Here, the circuit court did not find Dr. Price to be in contempt, and it did not recite a factual basis for doing so. Ergo, we must reverse the $1500 sanction.
Insofar as the order compels the production of documents by a nonparty, it is reviewable by certiorari because he has no adequate remedy by appeal. See Nussbaumer, 882 So.2d at 1072 (explaining the irreparable harm that results from the absence of an adequate remedy by appeal when order is directed to nonparty). To obtain relief, Dr. Price must also show a departure from the essential requirements of law and material injury. See Syken v. Elkins, 644 So.2d 539 (Fla. 3d DCA 1994), approved, 672 So.2d 517 (Fla.1996).
We conclude that the order departs from the essential requirements of law because the circuit court failed to apply the correct law. In Elkins v. Syken, 672 So.2d 517 (Fla.1996), the supreme court established criteria for the discovery of financial information from an expert witness, and the criteria were adopted in the Florida Rules of Civil Procedure. As set forth in rule 1.280(b)(4)(A)(iii), an expert may be asked about:
1. The scope of employment in the pending case and the compensation for such service.
2. The expert's general litigation experience, including the percentage of work performed for plaintiffs and defendants.
3. The identity of other cases, within a reasonable period of time, in which the expert has testified by deposition or at trial.
4. An approximation of the portion of the expert's involvement as an expert witness, which may be based on the number of hours, percentage of hours, or percentage of earned income derived from serving as an expert witness; however, the expert shall not be required to disclose his or her earnings as an expert witness or income derived from other services.
An expert may be required to produce financial and business records only under the most unusual or compelling circumstances and may not be compelled to compile or produce nonexistent documents.

(Emphasis supplied.)
In this case, a number of the requested documents exceeded the permissible *101 scope of discovery as set forth in the rule. For example, defense counsel sought to compel Dr. Price to produce documents substantiating the percentage of his expert work done on behalf of plaintiffs or defendants and to produce documents substantiating the percentages of his patients who have personal injury claims or suffered injuries in auto accidents. Despite Dr. Price's response that he does not maintain such records or calculate such statistics, the circuit court ordered him to produce these records, thus compelling him to compile or produce nonexistent documents. Requiring this type of production from a nonparty expert causes a material injury when, as here, it would impose an undue burden or expense. See Syken, 644 So.2d 539 (granting certiorari relief and quashing discovery orders directed to nonparty experts); cf. Allstate Ins. Co. v. Hodges, 855 So.2d 636 (Fla. 2d DCA 2003) (denying certiorari relief when discovery was sought from party, not expert, and noting that party may later seek to recoup costs incurred in responding to discovery request).
Accordingly, we quash the portion of the order that requires Dr. Price to produce the documents requested in Schedule B. If the defense again seeks production of those documents and Dr. Price objects, the circuit court must resolve the controversy in accordance with Elkins and rule 1.280. To the extent that the order requires Dr. Price to sit for his deposition and establishes a procedure for determining his expert witness fee, we deny the petition.
Monetary sanction reversed; petition for certiorari regarding discovery granted in part and denied in part.
SILBERMAN and LaROSE, JJ., Concur.